89 S.W.3d 17 (2002)
In the interest of C.H., a minor child.
No. 00-0552.
Supreme Court of Texas.
Argued April 11, 2001.
Decided July 3, 2002.
Rehearing Denied September 26, 2002.
*18 Charles G. Childress, Austin, Duke Hooten, Boerne, Sarah Regina Guidry, Houston, Texas Dept. of Protective & Regulatory Services, Jose R. Rodriguez, Michael J. Alvarez, El Paso County Attorneys, El Paso, John Cornyn, Attorney General of the State of Texas, Philip A. Lionberger, Office of the Attorney General of Texas, Julie Caruthers Parsley, Office of the Solicitor General of Texas, Austin, for Petitioner.
John Terence Garcia, Thomas E. Stanton, The Law Firm of James Kirby Read, El Paso, James W. Paulsen, Houston, for Respondent.
Justice JEFFERSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice OWEN, Justice BAKER, Justice O'NEILL, and Justice RODRIGUEZ join.
We are asked to decide the appropriate appellate standard to review the factual sufficiency of the evidence in parental termination cases, in which the burden of proof at trial is by clear and convincing evidence. We granted review to resolve the conflict among the courts of appeals about whether the traditional factual sufficiency standard is adequate to review the findings in a termination proceeding, and if not, what the appropriate standard should be. We hold that termination findings must be upheld against a factual sufficiency challenge if the evidence is such that a reasonable jury could form a firm belief or *19 conviction that grounds exist for termination under Texas Family Code sections 161.001 and 161.206(a). When reversing on insufficiency grounds, the reviewing court must detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence. Because the court of appeals did not correctly apply this standard, we reverse its judgment and remand to that court for further proceedings.

I
The Texas Department of Protective and Regulatory Services filed an action to terminate the parent-child relationship between the parents, Susan H. and Robert G., and the minor child, C.H., under the procedures provided in Texas Family Code Chapter 161. The trial court's charge asked the jury to make any affirmative findings about termination on clear and convincing evidence. The jury found that the parents had engaged in conduct warranting termination and that terminating the rights of both parents would be in the best interest of the child. The trial court rendered judgment in accordance with the verdict.
On appeal, the parents challenged the jury's findings on both legal and factual sufficiency grounds. The court of appeals rejected the parents' legal sufficiency challenges. In its factual sufficiency review, the court of appeals first noted that the clear-and-convincing burden of proof is intermediate between reasonable doubt and preponderance-of-the-evidence. 25 S.W.3d 38, 47. The court of appeals applied what it termed a higher standard of factual sufficiency review:
In reviewing factual sufficiency challenges in termination cases, again where the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of factual sufficiency review. After considering all of the evidence, we must determine not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in cases where the burden of proof is by a preponderance of the evidence, but whether the trier of fact [] could reasonably conclude that the existence of the fact is highly probable. Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. A challenge to the factual sufficiency of the evidence will only be sustained if the jury could not have reasonably found the facts to be established by clear and convincing evidence.
25 S.W.3d at 47-48 (citations omitted). The court held that the evidence was factually sufficient to support the jury's findings that both parents had endangered and abandoned the child. Id. at 52, 55-56. The court also concluded that there was some evidence to support the jury's findings that parental termination was in the best interest of the child. Id. at 53-54, 57. However, focusing primarily on the lack of evidence about C.H.'s needs and prospects beyond foster care, the court of appeals concluded that the record did not adequately support the conclusion that it was "highly probable" that termination of the parents' rights would be in the child's best interest. Id. at 57.

II
We review the record and the court of appeals' analysis with respect to Robert only, because Susan relinquished her parental rights and is not a party to this appeal. The trial court instructed the jury to determine if there was clear and convincing evidence:
*20 (A) that Robert [G] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child,; or,
(B) that Robert [G] voluntarily and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during the pregnancy with the child and continuing through birth, failed to provide adequate support or medical care for the mother during the period of abandonment before the birth of the child, and remained apart from the child or failed to support the child since the birth.
See Tex. Fam.Code § 161.001(1)(E), (H). We will recount the evidence the jury heard relevant to this charge.
When Susan began living with Robert, she was eighteen years old and had a history of drug abuse. She had run away from home at age fifteen and had given birth to a daughter at age sixteen. Robert was thirty-six years old at the time and married to Bertha, a woman with whom he had fathered a son. He had an extensive criminal record, including convictions for drug offenses, theft, and assault. Robert sold drugs for a living and was an addict. In 1996, while living together, Susan told Robert she was pregnant with C.H. At about the same time, Susan relinquished parental rights to her daughter and consented to her daughter's adoption.
Susan was pregnant with C.H. when both she and Robert were arrested in 1996 for possession of cocaine and heroin. After her release, Susan voluntarily entered a drug-treatment program, but left the drug-treatment center in a matter of days. Shortly after his release, Robert was again arrested on other drug charges. Robert was sentenced to ten years' imprisonment, a sentence he was serving at the time of trial.
Susan was incarcerated for the last five months of her pregnancy with C.H. She was released on probation ten days after his birth. Susan and C.H. resided in her mother's home for a few months, then they moved into an apartment with Susan's new boyfriend, Michael Russey. Following his drug conviction, Robert had minimal contact with either Susan or their son.
In March 1997, about a month after Susan and C.H. moved in with Michael Russey, Russey flagged down a passing police car, reported that he had a physical confrontation with Susan and that narcotics were being used in his apartment. When the officers entered the apartment, they found Susan in the bedroom with another man whom she knew only as "C.C." Two other couples were also in the apartment. C.H. was asleep in a playpen. The police found a spoon containing cocaine residue, matches, a plastic baggie, and empty balloons associated with heroin use near the child's bed. Other drug paraphernalia littered the bedroom and bathroom. Witnesses testified that the apartment was filthy, with mounds of clothes strewn about, grease spattered on the walls, and broken windows throughout the unit.
Susan testified that she and Russey had been smoking crack cocaine that night and had a violent argument. The police arrested Susan and charged her with cocaine possession. Emergency worker David Abogado from the Texas Department of Protective and Regulatory Services took custody of C.H. Since that time, C.H. has remained in a foster family's care.
Robert testified about his extensive criminal history at the termination hearing. Over the course of five years, he had been arrested for theft, possession of narcotics, *21 aggravated assault of a police officer, and repeated violations of probation. Robert conceded that he continued his criminal activities even after he learned of Susan's pregnancy. He acknowledged that, as a result of his criminal proclivities, he was unable to be present for the child's birth or formative years. Robert testified that after he and Bertha divorced, he did not provide child support to or know the whereabouts of his fourteen-year-old son.
Robert had seen C.H. only twice since his birth, once when Susan visited Robert in the county jail and once when Robert visited Susan in her mother's home. Robert had never lived with C.H., did not contact the Department about C.H., and never paid child support nor arranged medical care for Susan or C.H. Robert testified that the only time he attempted to provide financial support for C.H. was when he gave money to an acquaintance, who purportedly promised to deliver it to Susan. Robert claimed that the friend absconded with the money. Robert testified he was currently unable to provide financial support to C.H.
Evidence contrary to the verdict was comprised primarily of Robert's testimony. Robert testified that he loved C.H. and wished to remain his parent. Robert and Susan both stated that Robert encouraged Susan to obtain medical treatment while she was pregnant with C.H. Robert also testified that he intended to seek employment when released from prison so that he could provide for C.H. Finally, Robert testified that he was auditing classes on chemical dependency while incarcerated.
Dr. Richard Park conducted a psycho-social evaluation on Robert in March 1997. Dr. Park recommended that Robert's parental rights be terminated. He testified that, while Robert was "likeable," his ten-year prison sentence would impede his ability to be a parent to C.H. Dr. Park noted Robert's illicit livelihood, his criminal record, and his refusal to take personal responsibility for his criminal background. Dr. Park also noted that Robert had abandoned his only other son.
The Department visited C.H.'s foster family on a monthly basis. Dr. Park and Court Appointed Special Advocate (CASA) volunteers observed that C.H. was developing normally and that he was an emotionally stable, happy boy. The Department initiated proceedings to terminate Susan's and Robert's parental rights so that C.H. could be placed with adoptive parents. On a broad-form submission, the jury found that Susan's and Robert's parent-child relationships with C.H. should be terminated, and the trial court rendered judgment accordingly. Both Susan and Robert appealed.

III
The court of appeals determined that there was legally sufficient evidence that both Susan and Robert engaged in specific conduct under Texas Family Code section 161.001(1) warranting termination, and that termination would be in C.H.'s best interest. See Tex. Fam.Code § 161.001(2). The court of appeals also concluded the evidence was factually sufficient to support the finding that the parents had engaged in section 161.001(1) conduct. With respect to Robert in particular, the court found that "the series of arrests on drug offenses from April 1996 until November 1996, with full knowledge of [Susan's] pregnancy and possible consequences of his course of conduct, implies that [Robert] had a conscious disregard and indifference to his parental responsibilities." 25 S.W.3d at 55. The court concluded that Robert had "abnegated all personal responsibility for [Susan], thus consigning her fate, and their unborn son's, to chance or other people." Id. at 56.
*22 The court next addressed the sufficiency of the evidence to support the jury's finding that termination was in C.H.'s best interest. While purporting to analyze that issue in a light most favorable to the jury's finding, the actual analysis left critical facts unstated and faulted the Department for not producing specific evidence about who would care for the child in the event Robert's parental rights were terminated. The court of appeals concluded:
[T]he nature of his criminal record, at least what is in the record, establishes little. It does not appear to show that he is an abusive or violent person, nor does it appear that he has psychological problems, apart from his drug addiction, that potentially puts his son at risk. The Department suggests that [Robert G.]'s imprisonment conclusively establishes a potential adverse psychological impact on C.H., but there is no evidence as to the significance of impact on an infant as opposed to an older child. There is no evidence, expert, medical, or otherwise, about C.H.'s present and future emotional and physical needs in the time periods relevant to this case.
As we decided in the case of [Susan H.], we must conclude that the record before us does not contain clear and convincing evidence that termination of the parent-child relationship is in C.H.'s interest. The record does not adequately support the conclusion that it is highly probable that termination of [Robert G.]'s parental rights was in the best interest of C.H.
25 S.W.3d at 57.

IV
The Department, relying on Meadows v. Green, 524 S.W.2d 509 (Tex.1975) (per curiam), contends that the court of appeals erred in applying "heightened appellate review" because Texas jurisprudence recognizes only two levels of appellate evidentiary reviewlegal sufficiency and factual sufficiency. But Meadows has limited application in termination proceedings. In Meadows, we sought to reconcile decades of confusing and contradictory decisions using a clear-and-convincing standard, or some similarly-worded standard, in a variety of contexts. Those standards had been applied to issues as diverse as resulting trusts, probate, and parol evidence. See Grasty v. Wood, 230 S.W.2d 568, 572 (Tex. Civ.App.-Galveston 1950, writ ref'd n.r.e.); Simpson v. Neely, 221 S.W.2d 303, 312-13 (Tex.Civ.App.-Waco 1949, writ ref'd); Farr v. Moreland, 197 S.W.2d 386, 388 (Tex.Civ. App.-Texarkana 1946, no writ). See generally Vance, The Clear and Convincing Evidence Standard in Texas: A Critique, 49 Baylor L.Rev. 391. (1991). We held that civil cases should be subjected to only two appellate standards of review, legal and factual sufficiency. Meadows, 524 S.W.2d at 510. But Meadows predates application of a clear-and-convincing burden of proof as a constitutionally-mandated standard at trial.
In Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1978), rev'g, 557 S.W.2d 511 (Tex.1977), the United States Supreme Court concluded that due process demands clear and convincing proof before the state may involuntarily confine a person in a mental institution. The Supreme Court instructed:
The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusion for a particular type of adjudication."
Id. at 423, 99 S.Ct. 1804 (quoting In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, *23 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)).
On remand, we adopted the clear-and-convincing burden of proof and defined it as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." State v. Addington, 588 S.W.2d 569, 570 (Tex.1979). The following year, we extended the clear-and-convincing standard to termination proceedings because we determined that the constitutional interests at stake are no less compelling than the liberty interest in an involuntary commitment proceeding. In re G.M., 596 S.W.2d 846, 847 (Tex.1980). Citing Addington, we held that "[t]ermination is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination of the parent-child relationship by proof more substantial than a preponderance of the evidence." Id.
The Texas Legislature has now codified the clear-and-convincing standard in Family Code § 161.001(1), (2), which provides: a "court may order termination of the parent-child relationship if the court finds by clear and convincing evidence" that the parent has engaged in certain listed conduct and "termination is in the best interest of the child." After this Court decided In re G.M., the United States Supreme Court held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

V
While G.M. and Santosky established that the burden of proof in termination proceedings is clear and convincing evidence, neither decision indicated how appellate courts are to review findings based on that burden of proof. Our courts of appeals have wrestled with the standard for reviewing the factual sufficiency of findings that must be supported by clear and convincing evidence. See In re K.R., 22 S.W.3d 85, 90 (Tex.App.-Houston [14th Dist.] 2000) (acknowledging the courts of appeals' disagreement about the proper standard of appellate review of an involuntary termination of parental rights), rev'd on other grounds, 63 S.W.3d 796 (Tex. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2624, 153 L.Ed.2d 806 (2002).
Relying on authority from other jurisdictions, the Fifth Court of Appeals was the first to require an intermediate standard of appellate review. See Neiswander v. Bailey, 645 S.W.2d 835 (Tex.App.-Dallas 1982, no writ) (citing Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583, 600 (1944) and Comment, Evidence: Clear and Convincing Proof: Appellate Review, 32 Calif. L.Rev. 74 (1944)). The court reasoned that, because the standard of proof was an intermediate one, the standard of appellate review should likewise be an intermediate one. Neiswander, 645 S.W.2d at 835. The resulting appellate standard of review required the court of appeals to determine whether the trier of fact could reasonably conclude that the fact's existence is highly probable. Id. at 836.
Other courts of appeals have disagreed about whether termination proceedings require a third level of appellate review in addition to legal and factual sufficiency. The Fourth, Eighth, Ninth, and Tenth Courts of Appeals state that they employ a heightened level of appellate review. See In re J.M.T., 39 S.W.3d 234 (Tex.App.-Waco 1999, no pet.); In re K.C., Jr., 23 S.W.3d 604 (Tex.App.-Beaumont 2000, no pet.); In re B.R., 950 S.W.2d 113 (Tex. *24 App.-El Paso, 1997, no writ); In re H.C., 942 S.W.2d 661 (Tex.App.-San Antonio 1997, no writ). In B.R., for example, the court reasoned that it made sense to reject a third intermediate appellate standard of review when there were only two standards of proof allowed at trial in Texas. 950 S.W.2d at 118. But because this Court had subsequently required a third standard of clear-and-convincing proof at trial for involuntary termination of parental rights, the court in B.R. thought it appropriate for appellate courts to also employ a third standard of review. See id. (determining it incongruous to require trial courts to require an enhanced burden of proof while appellate courts applied the same appellate review accorded to preponderance-of-the-evidence issues).
This intermediate standard of appellate review has been described in slightly different ways by the various courts of appeals. Several courts have concluded the requirement that the existence of the fact be "highly probable" is merely another way of requiring that the existence of the fact be "clear and convincing." See Spangler v. Texas Dep't of Protective & Regulatory Servs., 962 S.W.2d 253, 257 (Tex.App.-Waco 1998, no pet.); In re B.R., 950 S.W.2d at 119 n. 5; In re L.R.M., 763 S.W.2d 64, 66 (Tex.App.-Fort Worth 1989, no writ); Neiswander, 645 S.W.2d at 835-36.
The Eighth Court of Appeals has examined factual sufficiency questions to determine if "the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established." In re B.R., 950 S.W.2d at 119. This meant sustaining the insufficient-evidence point of error only "if the fact finder could not have reasonably found the fact was established by clear and convincing evidence." Id. (quoting Mezick v. State, 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no writ)). The Ninth Court of Appeals has held that to withstand a factual sufficiency challenge in parental termination cases, "the evidence must permit a rational trier of fact to hold a firm belief or conviction as to the truth of the allegations sought to be established." In re K.C., Jr., 23 S.W.3d at 605. The Tenth Court of Appeals declared that it will sustain a factual insufficiency challenge "when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing." In re A.M.C., 2 S.W.3d 707, 711 (Tex.App.-Waco 1999, no pet.); see also Spangler, 962 S.W.2d at 257. The Fourth Court of Appeals reviewed a jury's findings based on clear and convincing evidence to determine whether sufficient evidence was presented to "produce in the mind of a rational factfinder a firm belief or conviction as to the truth of the allegations sought to be established." In re H.C., 942 S.W.2d 661, 663-64 (Tex. App.-San Antonio 1997, no writ).
Some courts of appeals that initially applied an intermediate standard of appellate review have more recently retreated to the traditional standard of appellate review for factual sufficiency challenges. See In re J.N.R., 982 S.W.2d 137, 143 & n. 5 (Tex. App.-Houston [1st Dist.] 1998, no writ) (expressly overruling former opinions); In re J.J., 911 S.W.2d 437, 439-40 & n. 1 (Tex.App.-Texarkana 1995, writ denied); In re W.S., 899 S.W.2d 772, 776 (Tex.App.-Fort Worth 1995, no writ); In re A.D.E., 880 S.W.2d 241, 245 (Tex.App.-Corpus Christi 1994, no writ); D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex.App.-Austin 1993, no writ). These courts have maintained the traditional appellate standard of review in factual sufficiency challenges even when a heightened *25 standard of proof was required at trial, holding that a court should sustain a factual sufficiency challenge only if the court concludes that the finding is "so weak or... so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." In re J.N.R., 982 S.W.2d 137, 143 (Tex.App.-Houston [1st Dist.] 1998, no pet.); see also In re B.S.T., 977 S.W.2d 481, 483 (Tex.App.-Houston [14th Dist.] 1998, no pet.); In re J.J., 911 S.W.2d at 439; In re J.F., 888 S.W.2d 140, 141 (Tex.App.-Tyler 1994, no writ); D.O., 851 S.W.2d at 353.

VI
The Department argues that the courts of appeals' various formulations of a heightened standard blur the distinction between legal and factual sufficiency review. Robert responds that federal constitutional concerns mandate a higher appellate standard.[1] We conclude that the burden of proof at trial necessarily affects appellate review of the evidence. Under traditional factual sufficiency standards, a court determines if a finding is so against the great weight and preponderance of the evidence that it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986). But that standard is inadequate when evidence is more than a preponderance (more likely than not) but is not clear and convincing. As a matter of logic, a finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance. See In re W.C., 56 S.W.3d 863, 868 (Tex.Civ.App.-Houston [14th Dist.] 2001, no pet.); In re K.R., 22 S.W.3d at 96-97 (Wittig, J., concurring).
We hold that the appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. That standard best comports with the Supreme Court's holding in Santosky, with the definition of clear and convincing evidence we first adopted in Addington, and with the Legislature's definition in the Family Code. See Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (holding that the clear-and-convincing standard "adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process."); Addington, 588 S.W.2d at 570 (holding that clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."); Tex. Fam.Code § 101.007 ("`Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."). *26 A standard that focuses on whether a reasonable jury could form a firm conviction or belief retains the deference an appellate court must have for the factfinder's role.
Accordingly, we disapprove of holdings that termination findings should be upheld if those findings are not against the great weight and preponderance of the evidence. See, e.g., In re King, 15 S.W.3d 272, 276 (Tex.App.-Texarkana 2000, pet. denied); In re K.C.M., 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); In re J.N.R., 982 S.W.2d at 143; In re B.S.T., 977 S.W.2d 481, 484 n. 4 (Tex.App.-Houston [14th Dist.] 1998, no pet.); In re D.L.N., 958 S.W.2d 934, 940 (Tex.App.-Waco 1997, pet. denied); Spurlock v. Texas Dep't of Protective & Regulatory Servs., 904 S.W.2d 152, 155 (Tex.App.-Austin 1995, writ denied).
There have been other opinions that, while attempting to account for the clear and convincing burden of proof, nevertheless stated standards that diverge perceptibly from the standard we announce today. We are not persuaded that these standards would necessarily have produced a different disposition had those courts reviewed the evidence under today's standard, because the opinions reflect that the courts undertook an exacting review of the entire record with a healthy regard for the constitutional interests at stake. Despite differences in articulated standards, the courts have often employed similar analyses in reaching their decisions. See In re Leal, v. Department of Protective & Regulatory Servs., 25 S.W.3d 315, 318-21 (Tex.App.-Austin 2000, no pet.). But in the interest of uniform decision-making, we reject any articulation of the standard that varies from the standard we announce today. Accordingly, we reject standards that retain the traditional factual sufficiency standard while attempting to accommodate the clear-and-convincing burden of proof. See, e.g., In re W.C., 56 S.W.3d at 868 n. 3; Leal, 25 S.W.3d at 321.
We also disapprove of the test Neiswander announced, that a court of appeals must determine whether a reasonable trier of fact could conclude that the existence of a disputed fact is "highly probable." See, e.g., In re A.R.R., 61 S.W.3d 691, 697 (Tex.App.-Fort Worth 2001, pet. denied); In re B.B., 971 S.W.2d 160, 164 (Tex.App.-Beaumont 1998, pet. denied); In re B.R., 950 S.W.2d 113, 119 (Tex.App.-El Paso 1997, no writ); Neiswander, 645 S.W.2d at 836. Because some could argue that evidence that makes the existence of a fact "highly probable" is not necessarily the same as evidence that produces a firm conviction in the existence of the fact, we reject the "highly probable" formulation. Cf. In re L.R.M., 763 S.W.2d 64, 66 (Tex. App.-Fort Worth, 1989, no writ)(stating that "highly probable" inquiry needlessly complicates the standard of review).

VII
We emphasize that, as appellate courts apply the standard we announce today, they must maintain the respective constitutional roles of juries and appellate courts. An appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt. See Santosky, 455 U.S. at 767-69, 102 S.Ct. 1388 (holding that "beyond reasonable doubt" standard not required in termination cases). While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.
*27 While the court of appeals recited the "highly probable" standard that we disavow, we do not view the recitation of an erroneous standard as harmful error in and of itself. The Department argues, however, that the court of appeals' application of the standard failed to give due deference to the jury's fact-finding function. We agree. The court of appeals properly stated that appellate courts should not reverse the judgment unless the jury could not reasonably have formed a firm conviction or belief that terminating Robert's parental rights was in C.H.'s best interest. However, the court did not properly adhere to that standard in reviewing the evidence. The court of appeals relied on some considerations this Court has said may be pertinent when deciding "best interest." Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). But we have never held that these considerations are exhaustive, or that all such considerations must be proved as a condition precedent to parental termination. The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child. Other cases, however, will present more complex facts in which paltry evidence relevant to each consideration mentioned in Holley would not suffice to uphold the jury's finding that termination is required.
In this case, the court of appeals based its insufficiency holding on five areas in which it concluded the evidence was lacking:
(1) the foster parents did not testify that they intended to adopt C.H., from which the court of appeals "necessarily infers that [the foster parents] were not considering or intending to adopt C.H.";
(2) there is no evidence about the emotional effect on C.H. were he to remain with the foster parents until he was either reunited with his mother, placed with a qualifying relative, or adopted;
(3) there is no evidence about the child's need for continuity of care and for timely integration into a stable and permanent home, taking into account the differences in development and the concept of time to children of different ages;
(4) there is no evidence to establish that the emotional and physical needs of the child, now and in the future, would be met by termination of the parent-child relationship; and
(5) there is no evidence about allegations that C.H. is experiencing developmental and health problems (sickle cell anemia) that would affect his adoptability.[2]
But the court did not fully account for the evidence that supported the jury's verdictparticularly evidence bearing upon Robert's historical deficiencies in parenting and current criminal proclivities. The court found "some footing" for the jury's termination finding in "the uncertainty of *28 [Robert's] ability to seek reunification" with C.H. In the main, however, the court reached its conclusion by disregarding evidence that the jury presumably considered clear and convincing.
For example, undisputed evidence established not only that Robert is unable to care for the child from prison, but that he has also exhibited a pattern of conduct that is inimical to the very idea of child-rearing. He failed to arrange medical care for Susan during her pregnancy with C.H.; he provided no emotional or financial assistance to C.H. after his birth; he had an "extensive criminal history involving drugs and assaults" which continued unabated after C.H.'s birth; and he had no concrete plan to provide emotional or physical care for C.H. The court of appeals held that the evidence was clear and convincing that Robert had endangered C.H.'s physical and emotional well-being, abandoned Susan during her pregnancy, failed to provide support or medical care for her and C.H., remained apart from them, and failed to support C.H. after his birth. 25 S.W.3d at 55-56. But, the opinion does not suggest that any of this evidence would be relevant to a determination of the child's best interest. While it is true that proof of acts or omissions under section 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues. Holley, 544 S.W.2d at 370; Wiley v. Spratlan, 543 S.W.2d 349, 351 (Tex.1976).
Moreover, the court's opinion gave no weight to the fact Robert had seen C.H. only twice and had done nothing to foster a parent-child relationship with C.H. The opinion also fails to account for Robert's testimony that he was unaware of the whereabouts of his fourteen-year-old son from his prior marriage and did not support him in any way. Robert's past performance as a parentapart from his criminal historycould certainly have a bearing on his fitness to provide for C.H., yet the court of appeals did not mention Robert's prior history of child neglect as a factor bearing upon the jury's finding that termination would be in C.H.'s best interest.
Regarding the court of appeals' conclusion that the foster family's failure to testify "necessarily infers that they were not considering or intending to adopt C.H.," we note that the Family Code provides that a court may appoint the Department as a child's managing conservator upon termination. Tex. Fam.Code § 161.207. Evidence about placement plans and adoption are, of course, relevant to best interest. However, the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located. Instead, the inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interesteven if the agency is unable to identify with precision the child's future home environment.
We do not have jurisdiction to conduct a factual sufficiency review, but we may ensure that the courts of appeals adhere to the proper legal standard of review. See Jaffe Aircraft Corp. v. Carr, 867 S.W.2d 27, 29 (Tex.1993) (stating that although this Court has no jurisdiction to determine the factual sufficiency of evidence, we may determine whether intermediate appellate courts properly follow applicable legal standards). Because the court of appeals disregarded much of the evidence supporting the finding that termination would be in C.H.'s best interest, and *29 failed to clearly explain why it concluded a reasonable jury could not form a firm conviction or belief from all the evidence that termination would be in C.H.'s best interest, the court of appeals has erred. Accordingly, we reverse the court of appeals' judgment and remand to that court to consider Robert G.'s factual sufficiency point under the standard announced today.
Justice HECHT filed a concurring opinion.
Justice HANKINSON concurred in the judgment only.
Justice HECHT, concurring.
I join fully in the Court's opinion and add only this brief note.
Respondent argues that appellate review of the evidence for terminating the parental relationship must not only be conducted in light of the requirement of proof by clear and convincing evidence but must also be de novothat is, with very limited deference to the finder of factas the United States Constitution requires in defamation cases[1] and for punitive damages awards.[2] Absent a definitive word from the United States Supreme Court on whether the Constitution requires this independent appellate review,[3] it might become necessary for this Court to address the issue. We have not done so here because it may make no difference; whether the evidence is sufficient to support the judgment in this case may not turn on what deference is paid the jury's findings. We should have the court of appeals' analysis of the evidence in light of the burden of proof before we take on the difficult constitutional issue.
Also, after reading the evidence set out in our opinion one might wonder why the State, far from failing to meet its burden of proof, should not be held to have established conclusively grounds for terminating Robert G.'s parental relationship with C.H. The State has not made this argument.
NOTES
[1] In Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485, 510-11, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) the United States Supreme Court held that, in First Amendment cases, a finding of "actual malice" must be supported by clear and convincing proof to satisfy due process. The Court adopted a standard of appellate review that required "judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of `actual malice'." Although the Supreme Court in Santosky has also required that parental termination be proved, at a minimum, by clear and convincing evidence, the Court did not articulate a standard for appellate review. Because we decide this case today on non-constitutional grounds, we express no opinion whether the Bose standard applies in a proceeding to terminate the parent-child relationship.
[2] Aside from referring to C.H.'s sickle cell anemia, this conclusion is inconsistent with the court's earlier rejection of those allegations:

... C.H. does not suffer from in utero exposure to drugs. The record shows that C.H. was born full-term and released from the hospital four days after birth. Every witness called by the Department who had observed C.H. following his removal, from mere days following to mere days before trial, stated that C.H.'s development was normal and appropriate. He was by all accounts a normal, well-developed, and happy baby.
25 S.W.3d at 50.
[1] Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 685-686, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); Bose Corp. v. Consumers Union, 466 U.S. 485, 510-511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).
[2] Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 436, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).
[3] See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).