NO. 12-05-00138-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF D.C.                                    §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant D.C. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered D.C. committed to Rusk State Hospital for a period not to exceed ninety days and
entered an order authorizing the Texas Department of Mental Health and Mental Retardation to
administer psychoactive medication to D.C. In two issues, D.C. asserts the evidence is legally and
factually insufficient to support the order of commitment and the order for administration of
psychoactive medication. We affirm.
 
Background
            On April 11, 2005, an application for court-ordered temporary mental health services was
filed requesting the court commit D.C. to Rusk State Hospital for a period not to exceed ninety days. 
The application was supported by a certificate of medical examination for mental illness, prepared
by a physician, Dr. C. Cuellar, who had examined D.C. on April 8. Dr. Cuellar diagnosed D.C. as
suffering from schizoaffective disorder. He found that D.C. is mentally ill and likely to cause serious
harm to others.
            Dr. Cuellar reached these conclusions because, on April 8, D.C. said he would kill anyone
coming into his home. He was hallucinating, angry, hostile, and threatening the caregivers. Based
on the same facts and D.C.’s statement that he had already killed a prowler, Dr. Cuellar found that
D.C. presents a substantial risk of serious harm to himself or others if not immediately restrained,
an opinion he based on D.C.’s behavior and on evidence of severe emotional distress and
deterioration in his mental condition to the extent he cannot remain at liberty. 
            On April 14, 2005, D.C. was examined by Dr. G. Paul Kula who then also prepared a
certificate of medical examination for mental illness. Dr. Kula diagnosed D.C. with schizoaffective
disorder. He indicated that D.C. is mentally ill, likely to cause serious harm to others, and suffering
severe and abnormal mental or physical distress, experiencing substantial mental or physical
deterioration of his ability to function independently, and is unable to make an informed decision
as to whether or not to submit to treatment. He came to these conclusions because D.C. requested
to be paid to give his history, believes his constitutional rights are being violated, and threatened to
kill the governor. Also, on April 8, 2005, he was hostile, sarcastic, and provocative, and refused to
answer questions or take his medications. Dr. Kula also determined that D.C. presents a substantial
risk of serious harm to himself or others if not immediately restrained, which is demonstrated by his
behavior and by evidence of severe emotional distress and deterioration in his mental condition to
the extent he cannot remain at liberty. He based that determination on D.C.’s statements and
behavior on April 14. On that date, D.C. believed he was being deprived of his rights, said he would
shoot anyone who tried to enter his house, and denied being ill. Also, on that date he was very
hostile, refused to answer questions, and refused to take his medications. 
            Dr. Kula testified at the hearing, first restating his diagnosis that D.C. is suffering from
schizoaffective disorder, a chronic mental illness. He testified that D.C. is likely to cause serious
harm to others and explained that D.C. threatened to shoot the governor of Texas. D.C. called the
governor’s office and threatened to kill him on April 8. He stated that D.C. is suffering severe and
abnormal mental, emotional, or physical distress, is unable to take care of his daily needs, and is
unable to make a rational and informed decision as to whether or not to submit to treatment. He
based his opinion on medical records and his examination of D.C. He explained that D.C. is
significantly psychotic and has mood related problems. He has problems with control of his anger. 
He will not answer questions, denies he has any symptoms or signs of illness, and refuses to take any
medication or believe he needs medication. If released, D.C. might be able to purchase food for
himself and provide for his dietary requirements. At the hospital, he requires prompting to dress and
groom himself and he probably would not be able to dress and groom himself if released from the
hospital. The doctor stated that Rusk State Hospital is the least restrictive available option for D.C.
at this time. 
            On cross-examination, Dr. Kula testified that he is not aware of any recent overt act by D.C.
to harm others. He explained that D.C.’s inability to clothe himself is because of his mental illness,
a basic sense of self-neglect, and his blindness. He needs assistance to take care of his personal
hygiene, partially because of blindness. Dr. Kula testified that D.C. would be able to live safely in
freedom if he is adequately medicated so that he is no longer symptomatic and he could reside safely
in a nursing home or rehabilitation center after he has gotten appropriate treatment. The doctor
explained that the usual course of treatment would last from three to eight weeks, depending on the
patient. 
            The court asked Dr. Kula what acts or behaviors he or other hospital staff had observed
indicating severe distress. Dr. Kula explained that D.C. remains significantly angry, hostile,
sarcastic, and defiant. He does not want to follow the rules or cooperate with giving additional
medical history. He refuses to take all medication and has to be redirected frequently by the staff
for nonparticipation in activities. D.C. appears to be chronically angry and hostile. The nursing staff
reports that they have to assist him in dressing and grooming, in part because authority figures are
met with resistance. The doctor stated that at this time D.C. is unable to recognize dangers outside
the hospital. Dr. Kula was uncertain whether D.C. could understand the inherent dangers of a
burning building. The doctor believes that, once stung, D.C. would understand the inherent dangers
of sitting in a fire ant bed. The doctor did not believe D.C. would understand the inherent danger
of being in the middle of a heavily traveled road or cooperate with anyone trying to redirect him.
            On further examination by the court, the doctor explained that, if D.C. were walking down
the street and approached by someone telling him he was in danger, he likely would not believe
them. His blindness-induced sensory deprivation contributes to the basic sense of paranoid ideations
that arise from his schizoaffective disorder.
            On further cross examination, Dr. Kula said he had not seen D.C. place himself in danger
while at the hospital and D.C.’s hearing does not appear to be impaired. The doctor said he thinks
that if D.C. believed he was in danger, if he interprets the situation correctly, he would remove
himself from the danger. However, D.C. believes there is a conspiracy to keep him here and deprive
him of his rights in general.
            D.C. testified on his own behalf. He said he does not feel he needs to be hospitalized and
wants to go “[r]ight back where [he] was picked up at, somewhere in the Montgomery County area.” 
He said he has a source of income and is able to take care of himself because the V.A. taught him
before they released him. He can do his own cooking and shopping. He said he understood that it
is dangerous to be in the middle of a regularly traveled road. He explained that he always waits until
someone is at the curb and then asks for help. He also explained that, under article IV of the Texas
Constitution, he has the right to save himself and his property if he has to kill to do it.


 He said that
the only reason he would do it is if he had been attacked once and knows it is coming back, because
he was trained to get it first, before it gets you. He would only act if his life was in danger.
            The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that D.C. is mentally ill, is likely to cause
serious harm to others, and that he is suffering severe and abnormal mental, emotional, or physical
distress; experiencing substantial mental or physical deterioration of his ability to function
independently, which is exhibited by his inability to provide for his basic needs; and is unable to
make a rational and informed decision as to whether or not to submit to treatment. The court ordered
D.C. committed to Rusk State Hospital for a period not to exceed ninety days. A separate hearing
was then held on the State’s application for an order to administer psychoactive medication. At the
close of evidence, the court entered an order to administer psychoactive medication for the period
of temporary commitment.
 
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 
            In addressing a factual sufficiency of the evidence challenge, we must consider all the
evidence in the record, both that in support of and contrary to the trial court’s findings. In re C.H.,
89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing. Id. at 25. We must determine
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations. Id. We must consider whether disputed evidence is such that a
reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. In
re J.F.C., 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the
factfinder. In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of
the witnesses and the weight to be given to their testimony. See id. at 27; In re J.J.O., 131 S.W.2d
618, 632 (Tex. App.–Fort Worth 2004, no pet.).
 
Commitment Order
            In his first issue, D.C. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. He contends that, while the evidence may reflect that D.C. may be
mentally ill and may be in need of hospitalization, the State did not prove all the statutory
requirements by clear and convincing evidence. He argues that the evidence does not show an overt
act or continuing pattern of behavior tending to confirm the doctor’s assertions that D.C. is unable
to function independently or may harm himself. 
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make
a rational and informed decision as to whether or not to submit to treatment. Tex. Health &
Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the
evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others, or the proposed patient’s distress and the deterioration of his ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that D.C. is mentally ill and describing his
behavior and statements. Dr. Cuellar stated in his certificate of medical examination that, on April 8,
D.C. threatened to kill anyone coming into his home. Dr. Kula testified that, on April 8, D.C. had
threatened to kill the governor of Texas. This is expert testimony of an overt act, a threat to kill, that
tends to confirm the likelihood of serious harm to others. 
            Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that D.C. is likely to cause
serious harm to others. The evidence presented satisfies the statutory requirement for clear and
convincing evidence in support of the order for temporary inpatient mental health services. See Tex.
Health & Safety Code Ann. § 574.034(d). The evidence is legally sufficient to support the trial
court’s order. See In re J.F.C., 96 S.W.3d at 266. 
            In addressing D.C.’s factual sufficiency complaint, we consider the evidence the factfinder
could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. Dr. Kula
explained that D.C. is chronically angry, defiant, and hostile and suffers from paranoid ideations. 
D.C. believes people conspire to deprive him of his rights. Dr. Kula questioned D.C.’s ability to
understand the situations he is in and respond appropriately. In addition to the general threat to kill
anyone coming into his home, D.C. called the governor’s office and made a specific threat on the
life of the governor on April 8. Because the hearing was held a week later, the trial court need not
find a discrepancy in Dr. Kula’s testimony that he was not aware of any recent overt act by D.C. to
harm others. Dr. Kula could have been referring to the week in the hospital. Although D.C. testified
that he would kill only if his life was in danger, he also said he has the right to save his property even
if he has to kill to do it. A reasonable factfinder could resolve this testimony in favor of its finding. 
See In re J.F.C., 96 S.W.3d at 266. In light of the entire record, the evidence that the trial court
could not have credited in favor of its findings is not so significant that it could not reasonably form
a firm belief or conviction that D.C. is likely to cause serious harm to others. See In re C.H., 89
S.W.3d at 25. Thus, the evidence is factually sufficient to support the trial court’s findings. Because
we hold the evidence is both legally and factually sufficient to support the trial court’s order, we
overrule D.C.’s first issue.
 
Psychoactive Medication
            In his second issue, D.C. asserts the evidence is neither legally nor factually sufficient to
support the order to administer psychoactive medication. He contends that the State did not prove
by clear and convincing evidence that he lacks the capacity to make a decision regarding the
administration of psychoactive medicine. 
            The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a), (a-1) (Vernon Supp. 2005). In
determining that there is a need for psychoactive medication, the court is required to consider the
following:
 
            (1) the patient’s expressed preferences regarding treatment with psychoactive medication;
              (2) the patient’s religious beliefs;
              (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;
              (4) the consequences to the patient if the psychoactive medication is not administered;
              (5) the prognosis for the patient if the patient is treated with psychoactive medication; 
              (6) alternatives to treatment with psychoactive medication; and
              (7) less intrusive treatments likely to secure the patient’s agreement to take the psychoactive medication.
Tex. Health & Safety Code Ann. § 574.106(b) (Vernon Supp. 2005).
            Dr. Kula testified that D.C. was, at the time of the hearing, under an order for temporary
mental health services. The doctor testified that D.C. suffers from schizoaffective disorder and lacks
the capacity to make a decision regarding administration of psychoactive medication. The
medications are in D.C.’s best interests, the benefits outweigh the risks, and his hospital stay would
be shortened if medications are used. Dr. Kula testified that D.C. refused to accept medications
voluntarily.
            On cross-examination, Dr. Kula said he thought D.C. understood the nature of his
conversation about medications. D.C. told Dr. Kula he did not need any medication. It appeared to
the doctor that D.C. understood that by saying “no” he would not get medication. On the other hand,
even if D.C. had said yes to medication, the doctor would have wanted a court order authorizing
medication because D.C. was not competent to make the decision. Dr. Kula testified that there are
no alternatives to the use of psychoactive medications that could render the same or similar results. 
The doctor estimated that D.C. might be discharged five to eight weeks after receiving a therapeutic
response from the medications.
            Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that D.C. lacked the capacity
to make a decision regarding administration of the proposed medication. See In re J.F.C., 96
S.W.3d at 266. This evidence satisfies the statutory requirement for clear and convincing evidence
in support of the order for administration of psychoactive medication. See Tex. Health & Safety
Code Ann. § 574.106(a-1). The evidence is legally sufficient to support the trial court’s order. See
J.F.C., 96 S.W.3d at 266.
            In addressing D.C.’s factual sufficiency complaint, we consider all the evidence, giving due
consideration to evidence the factfinder could reasonably have found to be clear and convincing. 
In re C.H., 89 S.W.3d at 25. D.C. testified at the hearing, stating that he did not believe taking the
medications would be in his best interest because he felt that the doctors were just practicing on him. 
The doctor could not tell him what side effects he would experience or how long they would last. 
He said the Veterans Administration was unable to explain the side effects about Thorazine. D.C.
explained that, until he is informed of the dangers, he does not intend to take any drugs unless he is
on his death bed and has no control. He fears the possible side effects and wants no part of any of
it. 
            Dr. Kula indicated that D.C. did not show recognition of his illness and did not have sound
judgment. Although he felt D.C. understood the nature of the conversation about medication, he felt
D.C. was not competent to make a decision about medication. In the application for court ordered
psychoactive medication, Dr. Douglas Johnson said D.C.’s mental illness renders him incapable of
appraising the benefits of medication and, if treated as requested, D.C.’s prognosis is good in the
sense that he may be able to move to a less restrictive setting. On the other hand, Dr. Johnson stated
that if the medication is not administered, D.C. will suffer long term deterioration requiring hospital
care. 
            In light of the entire record, the evidence that the trial court could not have credited in favor
of its findings is not so significant that the trial court could not reasonably form a firm belief or
conviction that D.C. lacks the capacity to make a decision regarding the administration of the
proposed medication and that treatment with the proposed medication is in his best interest. See id. 
Thus, the evidence is factually sufficient to support the trial court’s findings. See Tex. Health &
Safety Code Ann. § 574.106(a-1). Because we hold the evidence is both legally and factually
sufficient to support the trial court’s order, we overrule D.C.’s second issue.

Conclusion
            The evidence is legally and factually sufficient to support the trial court’s orders of
commitment for temporary inpatient mental health services and administration of psychoactive
medication. 
            We affirm the trial court’s orders.
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
Opinion delivered January 31, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

(PUBLISH)