NO.
12-05-00426-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS     §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
J.C.          §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Appellant
J.C. appeals from an order authorizing the Texas Department of State Health
Services (the “Department”) to administer psychoactive
medications-forensic.  In one issue, J.C.
asserts the evidence is legally and factually insufficient to support the trial
court’s order. We reverse and render.

 

Background

            On
December 16, 2005, Dr. Laurence Taylor signed an application for an order to
administer psychoactive medication-forensic to J.C.  In the application, Taylor stated that J.C.
was subject to an order for inpatient mental health services issued under
Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal
Procedure.  Taylor stated that J.C. had
been diagnosed with paranoid schizophrenia and requested the trial court to
compel J.C. to take six psychoactive medications: an antidepressant, an
anxoilytic/sedative/hypnotic, three antipsychotics, and a mood stabilizer.
According to Taylor, J.C. refused to take the medications voluntarily and, in
his opinion, J.C. lacked the capacity to make a decision regarding
administration of psychoactive medications because she exhibited “grandiosity,
excessive,” very poor insight and judgment, and paranoid schizophrenia. 

            Taylor
concluded that these medications are the proper course of treatment for J.C.
and that, if she were treated with the medications, her prognosis would be
good.  However, Taylor believed that, if
J.C. were not administered the medications, her mental health would deteriorate
to a more severe psychotic state.  Taylor
considered other medical alternatives to psychoactive medication, but
determined that those alternatives would not be as effective. He believed the
benefits of the psychoactive medications outweighed the risks in relation to
present medical treatment and J.C.’s best interest. Taylor also considered less
intrusive treatments likely to secure J.C.’s agreement to take the medications.

            On
December 27, the trial court held a hearing on the application.  Taylor testified that he is J.C.’s treating
physician and that she is currently under a Chapter 46B order (incompetency to
stand trial) for inpatient mental health services.  Taylor stated that J.C. has verbally, or
otherwise, refused to accept medication.  Taylor believes that J.C. lacks the capacity
to make a decision regarding the administration of psychoactive
medication.  Taylor stated that he
completed the application for an order to administer psychoactive
medication-forensic because J.C. suffers from paranoid schizophrenia.  Taylor testified that the medications listed
in the exhibit attached to the application are in J.C.’s best interest and that
treatment with these medications is the proper course of treatment for J.C.
Taylor further stated that the benefits of these medications outweigh the risks
and that J.C.’s stay in the hospital will likely be shortened if these
medications are administered.

            Taylor
does not believe J.C. understands right from wrong.  Although Taylor stated that J.C. can help in
her criminal trial “up to a degree,” he does not believe she is competent to
assist in her defense.  Taylor admitted
that he discussed his desire to use these medications with J.C. and that she
understood the discussion.  According to
Taylor, J.C. discussed her concerns about the potential side effects of these
medications, such as seizures.  She also
informed him that she was allergic to penicillin.  According to Taylor, J.C.’s fears of the
potential side effects was one of the bases of her desire not to take these
medications.  However, he does not
believe that J.C.’s interaction with him or her expression of concern was a
reasonable and fair discussion.  Taylor
admitted that J.C. had a seizure in the past, but he did not believe it was
from these medications.  He also admitted
that potential side effects of these medications was a reasonable concern, but
that J.C. carried her concern to a point that was not appropriate.  Taylor stated that J.C. would be monitored by
medical staff while being given these medications and, if she suffered severe
side effects, the medications would be stopped immediately.  If necessary, medication would be given to
counteract the side effects. Taylor testified that there were no alternatives
to the use of psychoactive medications that could render the same or similar
results and that J.C.’s condition would deteriorate without medication. He
admitted that it is possible J.C. could improve without medication, but not
probable. 

            J.C.
testified that she spoke with Taylor regarding his desire to use medications
and her concerns about taking these medications.  She admitted that she understood Taylor
completely and that “this” was in reference to her competency to stand trial.
J.C. stated that she discussed Taylor’s emergency application with him and
questioned his reasons for the application because she had not caused any
problems or harmed herself or others. 
J.C. testified that she does not take medications at all.  According to J.C., she informed Taylor that
she was allergic to penicillin and at least one other medication, suffering
break outs and two seizures.  She cannot
recall the medication prescribed, but testified that she “broke out” and had to
be taken to the hospital.  J.C. testified
that she was afraid of taking medications because she might get sick, have a
seizure, and pass out.  J.C. stated that
she would prefer being given Pepto-Bismol instead of Tylenol, for example,
because she does not consider Pepto-Bismol to be a medication. 

            Further,
according to J.C., she does not take drugs because of her religion.  J.C. stated that because of her Jewish
religion, she does not put things into her body that are not healthy.  She believes that taking medication affects
her spirit and her relationship with God because she would not have kept her “temple”
clean and pure.  J.C. also testified that
she believes in faith healing. According to J.C., she has not been given a diet
of healthy food and testified that she has to watch what she eats.  On one occasion, she informed the hospital
that she believed she was having a slight seizure because of the food.

            At
the close of the evidence, the trial court granted the application.  On December 27, after considering all the
evidence, including the application and the expert testimony, the trial court
found that the allegations in the application are true and correct and
supported by clear and convincing evidence. 
Further, the trial court found that treatment with the proposed
medication is in J.C.’s best interest and that J.C. lacks the capacity to make
a decision regarding administration of the medication.  The trial court authorized the Department to
administer to J.C. psychoactive medications, including antidepressants,
antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics.  This appeal followed.

 

Sufficiency
of the Evidence

            In
her sole issue, J.C. argues that the evidence is legally and factually
insufficient to support the trial court’s order to administer psychoactive
medications.  More specifically, J.C.
contends that she does not lack the capacity to make a decision regarding
administration of psychoactive medications and that these medications are not
in her best interest.  Further, J.C.
argues that the trial court failed to consider her religious beliefs.  The State disagrees.

Standard of Review

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, we must look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a
firm belief or conviction that its findings were true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  We must assume that the
fact finder settled disputed facts in favor of its finding if a reasonable fact
finder could do so and disregard all evidence that a reasonable fact finder
could have disbelieved or found incredible. 
Id.  This does not
mean that we are required to ignore all evidence not supporting the finding
because that might bias a clear and convincing analysis.  Id. 

            The
appropriate standard for reviewing a factual sufficiency challenge is whether
the evidence is such that a fact finder could reasonably form a firm belief or
conviction about the truth of the petitioner’s allegations.  In re C.H., 89 S.W.3d 17, 25
(Tex. 2002).  In determining whether the
fact finder has met this standard, we consider all the evidence in the record,
both that in support of and contrary to the trial court’s findings.  Id. at 27-29.  Further, we must consider whether disputed
evidence is such that a reasonable fact finder could not have reconciled that
disputed evidence in favor of its finding. 
In re J.F.C., 96 S.W.3d at 266.  If the disputed evidence is so significant
that a fact finder could not reasonably have formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.  

Order to Administer Psychoactive
Medication

            A
trial court may issue an order authorizing the administration of one or more
classes of psychoactive medications to a patient who is under a court order to
receive inpatient mental health services. 
Tex. Health & Safety Code
Ann. § 574.106(a) (Vernon Supp. 2005). 
The court may issue an order if it finds, by clear and convincing
evidence that  (1) the patient lacks the
capacity to make a decision regarding the administration of the proposed
medication and (2) treatment with the proposed medication is in the best
interest of the patient.  Id.
§ 574.106(a-1). “Capacity” means a patient’s ability to (1) understand the
nature and consequence of a proposed treatment, including the benefits, risks,
and alternatives to the proposed treatment, and (2) make a decision whether to
undergo the proposed treatment.  Tex. Health & Safety Code Ann. §
574.101(1) (Vernon 2003). In making its findings, the trial court shall
consider (1) the patient’s expressed preferences regarding treatment with
psychoactive medication, (2) the patient’s religious beliefs, (3) the risks and
benefits, from the perspective of the patient, of taking psychoactive
medication, (4) the consequences to the patient if the psychoactive medication
is not administered, (5) the prognosis for the patient if the patient is
treated with psychoactive medication, (6) alternatives to treatment with
psychoactive medication, and (7) less intrusive treatments likely to secure the
patient’s agreement to take the medication. 
Tex. Health & Safety Code Ann.
§ 574.106(b) (Vernon Supp. 2005).

Analysis

            J.C.
does not dispute that the evidence is legally and factually sufficient to show
that she is under an order for temporary mental health services.  Thus, we will consider whether the evidence
is legally and factually sufficient to support a finding that she lacked
capacity to make a decision regarding the administration of psychoactive
medications and that treatment with the proposed medications is in her best
interest.  In the application, Taylor
stated that he believed J.C. lacked the capacity to make a decision regarding
administration of psychoactive medications because she had “grandiosity,
excessive,” very poor insight and judgment, and paranoid schizophrenia.  Further, Taylor determined that, if J.C. were
not administered these medications, her mental health would deteriorate to a
more severe psychotic state.  Considering
all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that
J.C. lacked the capacity to make a decision regarding administration of the
proposed medications and that treatment with the proposed medications were in
her best interest.  See  Tex.
Health & Safety Code Ann. § 574.106(a-1); In re J.F.C.,
96 S.W.3d at 266.  Therefore, the
evidence is legally sufficient to support the trial court’s order.  See In re J.F.C., 96 S.W.3d at
266. 

            Having
determined that the evidence is legally sufficient to support the finding, we
address factual sufficiency and consider all of the evidence, both that in
support of and contrary to the trial court’s findings.  See In re C.H., 89 S.W.3d at
27-29.  At the hearing, Taylor testified
that he did not believe J.C. understood right from wrong, nor was she competent
to assist in her defense in her criminal trial. 
He also believed that her discussion with him regarding administration
of these medications was not reasonable and fair.  J.C. informed Taylor that she was allergic to
penicillin and that she was concerned about the potential side effects of these
medications, such as seizures.  Taylor
admitted that potential side effects of these medications was a reasonable
concern.  However, Taylor stated that
J.C. carried her concern to a degree that was not appropriate.  Nonetheless, Taylor testified that J.C. has
suffered a seizure in the past, although he did not believe it was from these
medications. 

            J.C.
testified that she understood Taylor’s discussion with her regarding
administration of these medications.  She
discussed Taylor’s application with him and why he filed it when she had not
caused any problems or harmed herself or others.  J.C. stated that she did not take medications
at all.  She informed Taylor that she was
allergic to penicillin and at least one other medication.  J.C. expressed her fear of taking these
medications because she had suffered two seizures and was afraid of getting
sick, having a seizure, and passing out. 
Further, J.C. testified that she did not take drugs because of her
religion.  According to J.C., she did not
put things into her body that were not healthy. She believed taking medication
would affect her spirit and her relationship with God because she would not
have kept her “temple” clean and pure. J.C. was also cautious about food and
complained that she had not been given a healthy diet. 

            J.C.
stated her religious objections to taking medications.  The trial court is not required to defer to
J.C.’s preferences and beliefs, but must consider them.  See Tex.
Health & Safety Code Ann. § 574.106(b).  Because J.C. presented evidence to the trial
court of her preference to avoid medications based upon her religious
beliefs,  it is presumed that the trial
court gave her preferences and beliefs due consideration.  As noted above, J.C. preferred to be treated
without medications.  See Tex. Health & Safety Code Ann. §
574.106(b).  Although Taylor testified
that J.C. would be monitored while being given these medications, her fear of
potential side effects was not unreasonable, especially considering her history
of seizures and allergies to medications. 
From her perspective, the risks of these medications outweighed the
benefits.  See id.  Further, the consequences of taking these
medications could be severe, including more seizures.  See id.  J.C. understood Taylor’s discussion with her
regarding administration of these medications, but questioned his emergency
application, observing that she had not caused problems, harmed herself, or
others.  See id. §
574.101(1). 

            Based
upon J.C.’s reasoned refusal to take the proposed medications because of her
history of seizures and religious objections, we conclude that the State failed
to introduce clear and convincing evidence of J.C.’s lack of capacity to make a
decision regarding administration of these medications or that these
medications were in her best interest. The disputed evidence is so significant
that the trial court could not reasonably have formed a firm belief or
conviction that J.C. lacked the capacity to make a decision regarding
administration of the proposed medications or that treatment with the proposed
medications was in her best interest.  See
id. § 574.106(a-1); In re J.F.C., 96 S.W.3d at
266.  Thus, in considering all the
evidence, the evidence is factually insufficient to support the trial court’s
finding based upon section 574.106(a-1) of the Texas Health and Safety
Code.  Accordingly, we sustain J.C.’s
sole issue as to factual sufficiency.

 

Conclusion

            Based
upon our review of the record, we conclude that the evidence is factually
insufficient to support the trial court’s order to administer psychoactive
medications-forensic.  Therefore, we reverse
the trial court’s order and render judgment denying the State’s
application for an order to administer psychoactive medication-forensic.

                                                                                                    DIANE DEVASTO   

                                                                                                                 Justice

 

 

Opinion
delivered April 28, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

(PUBLISH)