COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-113-CV
 
 
 
IN 
THE INTEREST OF C.G.E., L.C.S.,
AND 
M.W.S., CHILDREN
 
 
------------
 
FROM 
THE 30TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        This 
is a termination of parental rights appeal. Following a bench trial on March 31, 
2004, the trial court terminated the parental rights of Appellant Sarah S. to 
her three children C.G.E., L.C.S., and M.W.S.[2] and 
appointed the Texas Department of Protective and Regulatory Services[3] (“TDPRS”) to be permanent managing conservator of the 
three children. We affirm.
TRIAL COURT’S 
FINDINGS
        The 
trial court was not requested to file findings of fact and conclusions of law 
and none were filed. In its judgment, the trial court found that Appellant (1) 
engaged in conduct or knowingly placed the children with persons who engaged in 
conduct that endangered their physical or emotional well-being (section 
161.001(1)(E)); and (2) failed to comply with the provisions of a court order 
that specifically established the actions necessary for Appellant to obtain the 
return of the children who have been in the permanent or temporary managing 
conservatorship of TDPRS for not less than nine months as a result of the 
children’s removal from Appellant for abuse or neglect of the children 
(section 161.001(O)). The trial court also found that it is in the children’s 
best interest to terminate Appellant’s parental rights (section 161.001(2)).[4]
APPELLANT’S 
ISSUE ON APPEAL
        Appellant 
does not challenge the sufficiency of the evidence to support the trial 
court’s findings that she violated the two statutory grounds for termination. See 
id. § 161.001(1)(E), (O). In her sole issue, Appellant challenges the 
factual sufficiency of the evidence to support the trial court’s finding that 
termination is in the best interest of the children.[5]  
See id. § 161.001(2).
BURDEN OF PROOF IN TERMINATION PROCEEDINGS
        A 
parent’s rights to “the companionship, care, custody, and management” of 
his or her children are constitutional interests “far more precious than any 
property right.” Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 
1388, 1397 (1982). While parental rights are of constitutional magnitude, they 
are not absolute. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). Just as it is 
imperative for courts to recognize the constitutional underpinnings of the 
parent-child relationship, it is also essential that emotional and physical 
interests of the child not be sacrificed merely to preserve that right. Id. 
In a termination case, the State seeks not just to limit parental rights but to 
end them permanently—to divest the parent and child of all legal rights, 
privileges, duties, and powers normally existing between them, except for the 
child’s right to inherit. Tex. Fam. 
Code Ann. § 161.206(b) (Vernon Supp. 2004-05); Holick v. Smith, 
685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings 
and strictly construe involuntary termination statutes in favor of the parent. Holick, 
685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort 
Worth 2000, pet. denied) (op. on reh’g).
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon 
2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v. 
Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by clear and 
convincing evidence. Tex. Fam. Code Ann. 
§§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). 
This intermediate standard falls between the preponderance standard of ordinary 
civil proceedings and the reasonable doubt standard of criminal proceedings. G.M., 
596 S.W.2d at 847; D.T., 34 S.W.3d at 630. It is defined as the 
“measure or degree of proof that will produce in the mind of the trier of fact 
a firm belief or conviction as to the truth of the allegations sought to be 
established.” Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).
Best interest 
of the child
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:
 
        (1)    the 
desires of the child;
 
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)    any 
excuse for the acts or omissions of the parent.
   
Holley 
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not 
exhaustive; some listed factors may be inapplicable to some cases; other factors 
not on the list may also be considered when appropriate. C.H., 89 S.W.3d 
at 27. Furthermore, undisputed evidence of just one factor may be sufficient in 
a particular case to support a finding that termination is in the best interest 
of the children. Id. On the other hand, the presence of scant evidence 
relevant to each Holley factor will not support such a finding. Id.
BACKGROUND
        Appellant 
is the mother of three small children. At the time of trial, C.G.E. was eight, 
L.C.S. was five, and M.W.S. was four. Daniel C. is the father of C.G.E.; Lowell 
S. is the father of L.C.S. and M.W.S.[6]  
Appellant married Lowell when she was eighteen; they divorced on June 26, 2003 
when she was twenty-three. At the time of trial, the children had been removed 
from Appellant’s house for fifteen months and were in foster care under the 
supervision of Child Protective Services (CPS). TDPRS sought to terminate 
Appellant’s parental rights based upon her failure to protect the children 
from abuse they allegedly suffered because of Lowell; there has never been any 
allegation that Appellant herself abused the children.
        Appellant 
and her three children have been involved with CPS since January 1999 when the 
agency received a referral of physical abuse of C.G.E. who had a bite mark on 
his nose and finger and bruises on his left ear. CPS investigated but was unable 
to determine whether abuse had occurred.
        In 
April 1999, CPS investigated allegations of abuse of C.G.E. who had bruises on 
both cheeks, his neck, and right earlobe, and lacerations above his left eye. 
CPS’s investigation revealed that Lowell had caused the injuries when he 
punched and pinched C.G.E.
        In 
May 1999, CPS received another allegation of physical abuse of C.G.E. when he 
had bruises to his ear and forehead. CPS’s investigation revealed that Lowell 
had bitten C.G.E.’s ear. At that time, Appellant and the children moved in 
with her mother and Appellant agreed to separate from Lowell.
        In 
January 2000, CPS received two different referrals of abuse to C.G.E. CPS’s 
investigation revealed that Lowell had hit C.G.E. with his fist.
        In 
March 2000, CPS took all three children into protective custody and an adversary 
hearing was held. At the hearing, Appellant stated she had left Lowell and was 
filing for divorce. However, at some point before September 2002 the children 
were returned to Appellant and she got back together with Lowell; the record 
does not reflect the date the children were returned to Appellant. Appellant did 
not further pursue divorce proceedings at that time.
        In 
September 2002, CPS received an allegation of physical abuse of C.G.E. CPS’s 
investigation revealed that Lowell had knocked C.G.E. out of his chair and then 
bit him for not doing his homework correctly.
        In 
October 2002, CPS received a referral of physical abuse of L.C.S. CPS’s 
investigation revealed that L.C.S. had bruises on his back, arm, and both ears 
because he had been hit with a belt by Lowell while Appellant was present. At 
that time, CPS cautioned Appellant that she needed to protect the children from 
Lowell, and she sought and received a protective order. The protective order 
expired on November 6, 2002, and Lowell moved back into the home with Appellant 
and the children on November 7, 2002. CPS was aware that Lowell had moved back 
into Appellant’s home with the children, but took no action to remove the 
children.
        On 
November 13, 2002, CPS investigated a referral of physical abuse to L.C.S. who 
was seen with an abrasion on his ear and arm. The investigation revealed that 
Lowell had hit L.C.S. with a belt on his ear, and had cut his arm with a knife; 
Appellant was home at the time of the incident. June Davidson, the CPS case 
worker who investigated the incident, testified that L.C.S. told her that Lowell 
hurt him because his daddy was a bad man. The children were again removed from 
the home.
        At 
that time, CPS established a family service plan for Appellant; the first 
priority on the plan was for her to sever her relationship with Lowell and 
demonstrate the ability to protect her children and herself from him. The CPS 
case worker assigned to the case, Marilyn Morgan, testified that Appellant 
failed to meet this goal and has not demonstrated that she can protect her 
family from Lowell. Although Appellant completed the required counseling 
sessions, she failed to complete parenting classes that were designed to help 
her protect her children from abuse. In fact, Appellant only finished thirty 
percent of the required items that the court ordered in the parenting plan. 
Appellant tested positive for drugs (marijuana) at least once a month. During 
the eighteen months that CPS’s current file on the family has been ongoing, 
Appellant has never financially supported her children. Although Appellant lives 
in a house, her parents pay all her expenses and CPS does not consider somebody 
else paying Appellant’s rent as her maintaining a proper home environment. 
When CPS made an unannounced visit to Appellant’s house in February 2004, 
there was a great deal of trash on the floor, dog feces on the carpet, trash and 
feminine products around the commode which had feces in it, there was little or 
no food in the house, and the kitchen sink was overflowing with trash. There was 
a pill bottle belonging to Lowell on the floor; the prescription was for an 
anti-depressant and was dated in September 2003.
        Morgan 
testified that Appellant called Lowell from jail in February 2004 at least three 
times and he visited her in jail.[7]  During the 
telephone calls from the jail, Appellant referred to Lowell as her husband. It 
was clear to Morgan after listening to the tapes of the three conversations that 
Appellant and Lowell’s relationship was still that of husband and wife, even 
though they were divorced at that time.
        Morgan 
stated that the children have physical scars and burn marks from Lowell’s 
beatings, and they have emotional scars. Morgan told the court that in CPS’s 
opinion Appellant has demonstrated that it is not possible for her to carry on a 
relationship with Lowell and still be able to protect the children from his 
abuse. Appellant cannot maintain boundaries when it comes to Lowell, so Morgan 
believes the children would not be protected. Further, she testified that it 
would cause emotional damage to the children if they knew their mother continued 
to have a relationship with the man who physically abused them. Lastly, CPS 
believes it is in the best interest of the children that Appellant’s parental 
rights be terminated because she never really changed her behavior from when 
Morgan first became involved in the case in November 2002 until the time of 
trial.
        June 
Davidson testified that after CPS removed the children from Appellant’s home 
the second time, Davidson encountered Appellant and Lowell together at a 
McDonald’s restaurant at a time when Appellant’s service plan required her 
to have absolutely no contact with Lowell.
        Jacqueline 
Lenehan, the childrens’ CPS case worker, testified that C.G.E. disclosed to 
her that he had been burned with an automobile cigarette lighter and with 
cigarettes, and he had been hit with belts. C.G.E. has a scar on the back of his 
head from where Lowell threw him against a wall. She testified that in her 
opinion it is not in the best interest of any of the children for them to return 
to Appellant’s home.
        Patricia 
Barber works for Child Advocates and is the childrens’ case supervisor as well 
as the court-appointed guardian ad litem. On March 5, 2004, she saw Appellant 
leaving the apartments where Lowell’s grandparents live, which is where 
Appellant testified she believed Lowell was living. Barber testified that in her 
opinion termination of Appellant’s parental rights is in the best interest of 
the children because Appellant continues to maintain an ongoing relationship 
with Lowell, who is the perpetrator of the injuries to the children. Appellant 
remains dependent upon Lowell, not just financially but emotionally and 
physically, and this is a detriment to the children because she will not be able 
to let go of Lowell if the children return home, and therefore will not be able 
to protect the children from Lowell.
        Appellant 
admitted at trial that after her divorce from Lowell she lived with him at a 
motel for about a month. She also admitted that she knew that Lowell has some 
violent tendencies and anger management problems. She denied ever seeing Lowell 
hit, slap, or punch the children, although she knew she had not caused their 
bruises and that the children accused Lowell of causing their bruises. Lowell 
had abused Appellant when the children were present and watching; the abuse of 
Appellant by Lowell occurred more than ten times. Initially, Lowell abused 
Appellant every two or three months, then the abuse started occurring once a 
month, then every other week.
        At 
trial, Appellant recognized that it is her responsibility to make sure the 
children are safe and not being abused by Lowell. She said she always understood 
that CPS has wanted her to protect the children from Lowell, and she 
acknowledged that the children have said things to her that make her feel they 
are scared of Lowell.
        Appellant 
testified that Lowell was very interested in horror movies that showed blood and 
gore and death, and she knew that the children were exposed to a great deal of 
that through Lowell. While she lived with Lowell she was frequently scared of 
him and admitted she was afraid he might kill her.
        Michael 
Vandehey, Ph.D., is a licensed psychologist who has been counseling C.G.E. for 
over a year and counseling L.C.S. for eight months. He sees them separately and 
neither brother is aware that the other is being counseled by Vandehey because 
they live in different foster homes. Vandehey testified that C.G.E. has reported 
being yanked out of bed, struck in the stomach, choked, and thrown against the 
wall. C.G.E. has many scars resulting from these actions, all of which C.G.E. 
said were done by Lowell. Using drawing exercises, C.G.E. indicated to Vandehey 
that Appellant was present in the house during many of these abusive episodes; 
however, C.G.E. verbally said that Appellant was not present. C.G.E. said that 
he had seen Lowell do similar things to L.C.S. Vandehey stated that L.C.S. has 
scars on his body which L.C.S. said were caused by Lowell. Vandehey testified 
that both C.G.E. and L.C.S. have severe behavioral problems and C.G.E. will need 
a minimum of two to three more years of counseling. Both children require a home 
where there will be no domestic violence, and Vandehey was emphatic that neither 
child should ever again be exposed to Lowell. He concluded that he “would be 
very scared for the children if they were going back to a home where Lowell 
could have contact with them.”
        The 
position of the childrens’ attorney ad litem was that the children have an 
overriding personal and legal interest in being protected from Lowell and 
Appellant has not demonstrated her ability to do this. Therefore, the opinion of 
the attorney ad litem was that Appellant’s parental rights should be 
terminated.
STANDARD OF 
REVIEW
        In 
a trial to the court where no findings of fact or conclusions of law are filed, 
the trial court’s judgment implies all findings of fact necessary to support 
it.  Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996). 
Where a reporter’s record is filed, however, these implied findings are not 
conclusive and an appellant may challenge them by raising both legal and factual 
sufficiency of the evidence issues. BMC Software Belg., N.V. v. Marchand, 
83 S.W.3d 789, 795 (Tex. 2002). Where such issues are raised, the applicable 
standard of review is the same as that to be applied in the review of jury 
findings or a trial court’s findings of fact. Roberson v. Robinson, 768 
S.W.2d 280, 281 (Tex. 1989).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review. In re C.H., 89 S.W.3d at 25. “[A] finding 
that must be based on clear and convincing evidence cannot be viewed on appeal 
the same as one that may be sustained on a mere preponderance.” Id. In 
considering whether the evidence of termination rises to the level of being 
clear and convincing, we must determine “whether the evidence is such that a 
factfinder could reasonably form a firm belief or conviction” that the grounds 
for termination were proven. Id. Our inquiry here is whether, in 
reviewing the entire record, a factfinder could reasonably form a firm 
conviction or belief that termination of the parent’s parental rights would be 
in the best interest of the child. Id. at 28.
DISCUSSION
        The 
evidence established that between 1999 and 2002 when the children were removed 
from Appellant’s home, Lowell frequently beat, bit, burned, choked, and 
tormented C.G.E. and L.C.S. Appellant was aware of the abuse and knew that her 
children were terrified of Lowell. Although Appellant was repeatedly warned by 
case workers to protect her children, she failed to do so. In 2000, Appellant 
promised the trial court that she would sever all ties with Lowell, and she made 
the same promises to CPS case workers over the course of several years. However, 
Appellant always allowed Lowell to move back into the house with her and her 
children, and Lowell would again begin to physically abuse the two older 
children. Appellant continued to have contact with Lowell even after they 
divorced, at which time she referred to him as her husband, and she remained 
emotionally dependent upon him.
        Three 
CPS case workers who worked extensively with Appellant and the children 
testified that in their expert opinions termination would be in the best 
interest of the children because Appellant has exhibited a complete inability to 
sever ties with Lowell and has failed to protect her children from him. CPS 
believes that all three children can be placed with suitable adopting parents.
        The 
treating psychologist for the two older children testified that it would be 
extremely detrimental for the children to ever have any contact with Lowell. The 
children’s guardian ad litem and their attorney ad litem both testified that 
in their opinions Appellant has not demonstrated that she has the ability to 
protect the children from Lowell. They opined that Appellant remains dependent 
upon Lowell emotionally and physically and that this is a detriment to the 
children because Appellant will not be able to break her ties with Lowell if the 
children return home.
        Having 
thoroughly reviewed all the evidence and applying the appropriate standard of 
review,[8] we conclude the evidence was such that the 
trial court, as finder of fact, could reasonably form a firm belief or 
conviction by clear and convincing evidence that termination of Appellant’s 
parental rights would be in the best interest of the children. Accordingly, we 
overrule Appellant’s sole issue and affirm the judgment of the trial court.
  
   
                                                          PER 
CURIAM
  
 
 
PANEL 
A: HOLMAN, J.; CAYCE, C.J.; and WALKER, J.
 
DELIVERED: 
April 7, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
To protect the privacy of the parties involved in this appeal, we identify the 
children by initials only and Appellant by her first name only, although we will 
refer to her as Appellant.  See Tex. Fam. Code Ann. § 109.002(d) 
(Vernon 2002).  When appropriate, we will refer to C.G.E., L.C.S., and 
M.W.S. collectively as “the children.”
3.  
The name of the agency has changed to the Texas Department of Family and 
Protective Services effective September 1, 2003. See Act of June 2, 2003, 
78th Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 611, 
641, 729.  However, because the pleadings and judgment in the trial court 
refer to the Texas Department of Protective and Regulatory Services, for the 
sake of consistency will do likewise in this opinion.
4.  
Tex. Fam. Code Ann. §§ 
161.001(1)(E), (O), 161.001(2) (Vernon 2002).
5.  
Appellant’s issue is phrased as a challenge to the “sufficiency” of the 
evidence.  Inasmuch as Appellant requests the trial court’s termination 
judgment be reversed and the case remanded for a new trial, we construe her 
contention to be a challenge to the factual, not the legal, sufficiency of the 
evidence.
6.  
On September 30, 2003, Lowell signed affidavits of relinquishment regarding his 
parental rights in L.C.S. and M.W.S. and that cause was severed from the cause 
TDPRS brought against Appellant and Daniel.  The judgment terminating the 
parental rights of Appellant also terminated the parental rights of Daniel in 
C.G.E.  Daniel has not appealed this ruling.
7.  
The record does not reflect why Appellant was incarcerated.
8.  
See In re C.H., 89 S.W.3d at 25-28.