IN RE C.E.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-113-CV

IN THE INTEREST OF C.G.E., L.C.S.,

AND M.W.S., CHILDREN 

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a termination of parental rights appeal.  Following a bench trial on  March 31, 2004, the trial court terminated the parental rights of Appellant Sarah S. to her three children C.G.E., L.C.S., and M.W.S.
(footnote: 2) and appointed the Texas Department of Protective and Regulatory Services
(footnote: 3) (“TDPRS”) to be permanent managing conservator of the three children.  We affirm.

TRIAL COURT’S FINDINGS

The trial court was not requested to file findings of fact and conclusions of law and none were filed.  In its judgment, the trial court found that Appellant  (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being (section 161.001(1)(E)); and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who have been in the permanent or temporary managing conservatorship of TDPRS for not less than nine months as a result of the children’s removal from Appellant for abuse or neglect of the children (section 161.001(O)).  The trial court also found that it is in the children’s best interest to terminate Appellant’s parental rights (section 161.001(2)).
(footnote: 4)

APPELLANT’S ISSUE ON APPEAL

Appellant does not challenge the sufficiency of the evidence to support the trial court’s findings that she violated the two statutory grounds for termination.  
See id
. § 161.001(1)(E), (O).  In her sole issue, Appellant challenges the factual sufficiency of the evidence to support the trial court’s finding that termination is in the best interest of the children.
(footnote: 5)  
See id. 
§ 161.001(2).

BURDEN OF PROOF IN TERMINATION PROCEEDINGS

A parent’s rights to “the companionship, care, custody, and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).  While parental rights are of constitutional magnitude, they are not absolute.  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.  
Id.
  In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.  
Tex. Fam. Code Ann. 
§ 161.206(b) (Vernon Supp. 2004-05); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick
, 685 S.W.2d at 20-21;
 In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Tex. Fam. Code Ann. 
§ 161.001 (Vernon 2002); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  
Tex. Fam. Code Ann.
 §§ 161.001, 161.206(a); 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M.
, 596 S.W.2d at 847; 
D.T.
, 34 S.W.3d at 630.  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).

Best interest of the child

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C.H
., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children.  
Id.
  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
Id.

BACKGROUND

Appellant is the mother of three small children.  At the time of trial,  C.G.E. was eight, L.C.S. was five, and M.W.S. was four.  Daniel C. is the father of C.G.E.; Lowell S. is the father of L.C.S. and M.W.S.
(footnote: 6) 
 Appellant married Lowell when she was eighteen; they divorced on June 26, 2003 when she was twenty-three.  At the time of trial, the children had been removed from Appellant’s house for fifteen months and were in foster care under the supervision of Child Protective Services (CPS).  TDPRS sought to terminate Appellant’s parental rights based upon her failure to protect the children from abuse they allegedly suffered because of Lowell; there has never been any allegation that Appellant herself abused the children.

Appellant and her three children have been involved with CPS since January 1999 when the agency received a referral of physical abuse of C.G.E. who had a bite mark on his nose and finger and bruises on his left ear.  CPS investigated but was unable to determine whether abuse had occurred.

In April 1999, CPS investigated allegations of abuse of C.G.E. who had bruises on both cheeks, his neck, and right earlobe, and lacerations above his left eye.  CPS’s investigation revealed that Lowell had caused the injuries when he punched and pinched C.G.E.

In May 1999, CPS received another allegation of physical abuse of C.G.E. when he had bruises to his ear and forehead.  CPS’s investigation revealed that Lowell had bitten C.G.E.’s ear.  At that time, Appellant and the children moved in with her mother and Appellant agreed to separate from Lowell.

In January 2000, CPS received two different referrals of abuse to C.G.E.  CPS’s investigation revealed that Lowell had hit C.G.E. with his fist.

In March 2000, CPS took all three children into protective custody and an adversary hearing was held.  At the hearing, Appellant stated she had left Lowell and was filing for divorce.  However, at some point before September 2002 the children were returned to Appellant and she got back together with Lowell; the record does not reflect the date the children were returned to Appellant.  Appellant did not further pursue divorce proceedings at that time.

In September 2002, CPS received an allegation of physical abuse of C.G.E.  CPS’s investigation revealed that Lowell had knocked C.G.E. out of his chair and then bit him for not doing his homework correctly.

In October 2002, CPS received a referral of physical abuse of L.C.S.  CPS’s investigation revealed that L.C.S. had bruises on his back, arm, and both ears because he had been hit with a belt by Lowell while Appellant was present.  At that time, CPS cautioned Appellant that she needed to protect the children from Lowell, and she sought and received a protective order.  The protective order expired on November 6, 2002, and Lowell moved back into the home with Appellant and the children on November 7, 2002.  CPS was aware that Lowell had moved back into Appellant’s home with the children, but took no action to remove the children.

On November 13, 2002, CPS investigated a referral of physical abuse to L.C.S. who was seen with an abrasion on his ear and arm.  The investigation revealed that Lowell had hit L.C.S. with a belt on his ear, and had cut his arm with a knife;  Appellant was home at the time of the incident.  June Davidson, the CPS case worker who investigated the incident, testified that L.C.S. told her that Lowell hurt him because his daddy was a bad man.  The children were again removed from the home.

At that time, CPS established a family service plan for Appellant; the first priority on the plan was for her to sever her relationship with Lowell and demonstrate the ability to protect her children and herself from him.  The CPS case worker assigned to the case, Marilyn Morgan, testified that Appellant failed to meet this goal and has not demonstrated that she can protect her family from Lowell.  Although Appellant completed the required counseling sessions, she failed to complete parenting classes that were designed to help her protect her children from abuse.  In fact, Appellant only finished thirty percent of the required items that the court ordered in the parenting plan.
 Appellant tested positive for drugs (marijuana) at least once a month.  During the eighteen months that CPS’s current file on the family has been ongoing, Appellant has never financially supported her children.  Although Appellant lives in a house, her parents pay all her expenses and CPS does not consider somebody else paying Appellant’s rent as her maintaining a proper home environment.  When CPS made an unannounced visit to Appellant’s house in February 2004, there was a great deal of trash on the floor, dog feces on the carpet, trash and feminine products around the commode which had feces in it, 
there was little or no food in the house, and the kitchen sink was overflowing with trash.  There was a pill bottle belonging to Lowell on the floor; the prescription was for an anti-depressant and was dated in September 2003. Morgan testified that Appellant called Lowell from jail in February 2004 at least three times and he visited her in jail.
(footnote: 7)  During the telephone calls from the jail, Appellant referred to Lowell as her husband.  It was clear to Morgan after listening to the tapes of the three conversations that Appellant and Lowell’s relationship was still that of husband and wife, even though they were divorced at that time.

Morgan stated that the children have physical scars and burn marks from Lowell’s beatings, and they have emotional scars. 
 Morgan told the court that in CPS’s opinion Appellant has demonstrated that it is not possible for her to carry on a relationship with Lowell and still be able to protect the children from his abuse.  Appellant cannot maintain boundaries when it comes to Lowell, so Morgan believes the children would not be protected.  Further, she testified that it would cause emotional damage to the children if they knew their mother continued to have a relationship with the man who physically abused them. Lastly, CPS believes it is in the best interest of the children that Appellant’s parental rights be terminated because she never really changed her behavior from when Morgan first became involved in the case in November 2002 until the time of trial.

June Davidson testified that after CPS removed the children from Appellant’s home the second time, Davidson encountered Appellant and Lowell together at a McDonald’s restaurant at a time when Appellant’s service plan required her to have absolutely no contact with Lowell.

Jacqueline Lenehan, the childrens’ CPS case worker, testified that C.G.E. disclosed to her that he had been burned with an automobile cigarette lighter and with cigarettes, and he had been hit with belts.  C.G.E. has a scar on the back of his head from where Lowell threw him against a wall.  She testified that in her opinion it is not in the best interest of any of the children for them to return to Appellant’s home.

Patricia Barber works for Child Advocates and is the childrens’ case supervisor as well as the court-appointed guardian ad litem.  On March 5, 2004, she saw Appellant leaving the apartments where Lowell’s grandparents live, which is where Appellant testified she believed Lowell was living. 
 Barber testified that in her opinion termination of Appellant’s parental rights is in the best interest of the children because Appellant continues to maintain an ongoing relationship with Lowell, who is the perpetrator of the injuries to the children.  Appellant remains dependent upon Lowell, not just financially but emotionally and physically, and this is a detriment to the children because she will not be able to let go of Lowell if the children return home, and therefore will not be able to protect the children from Lowell.

Appellant admitted at trial that after her divorce from Lowell she lived with him at a motel for about a month.  She 
also admitted that she knew that Lowell has some violent tendencies and anger management problems.  She denied ever seeing Lowell hit, slap, or punch the children, although she knew she had not caused their bruises and that the children accused Lowell of causing their bruises.  Lowell had abused Appellant when the children were present and watching; the abuse of Appellant by Lowell occurred more than ten times.  Initially, Lowell abused Appellant every two or three months, then the abuse started occurring once a month, then every other week.

At trial, Appellant recognized that it is her responsibility to make sure the children are safe and not being abused by Lowell.  She said she always understood that CPS has wanted her to protect the children from Lowell, and she acknowledged that the children have said things to her that make her feel they are scared of Lowell.

Appellant testified that Lowell was very interested in horror movies that showed blood and gore and death, and she knew that the children were exposed to a great deal of that through Lowell.  While she lived with Lowell she was frequently scared of him and admitted she was afraid he might kill her.

Michael Vandehey, Ph.D., is a licensed psychologist who has been counseling C.G.E. for over a year and counseling L.C.S. for eight months.  He sees them separately and neither brother is aware that the other is being counseled by Vandehey because they live in different foster homes.  Vandehey testified that C.G.E. has reported being yanked out of bed, struck in the stomach, choked, and thrown against the wall.  C.G.E. has many scars resulting from these actions, all of which C.G.E. said were done by Lowell. Using drawing exercises, C.G.E. indicated to Vandehey that Appellant was present in the house during many of these abusive episodes; however, C.G.E. verbally said that Appellant was not present. 
 C.G.E. said that he had seen Lowell do similar things to L.C.S.  Vandehey stated that L.C.S. has scars on his body which L.C.S. said were caused by Lowell.  Vandehey testified that both C.G.E. and L.C.S. have severe behavioral problems and C.G.E. will need a minimum of two to three more years of counseling.  Both children require a home where there will be no domestic violence, and Vandehey was emphatic that neither child should ever again be exposed to Lowell.  He concluded that he “would be very scared for the children if they were going back to a home where Lowell could have contact with them.”

The position of the childrens’ attorney ad litem was that the children have an overriding personal and legal interest in being protected from Lowell and Appellant has not demonstrated her ability to do this.  Therefore, the opinion of the attorney ad litem was that Appellant’s parental rights should be terminated.

STANDARD OF REVIEW

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court’s judgment implies all findings of fact necessary to support

it.  
Pharo v. Chambers County
, 922 S.W.2d 945, 948 (Tex. 1996).  Where a reporter’s record is filed, however, these implied findings are not conclusive and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues.  
BMC Software Belg., N.V. v. Marchand
, 83 S.W.3d 789, 795 (Tex. 2002).
  Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court’s findings of fact.  
Roberson v. Robinson
, 768 S.W.2d 280, 281 (Tex. 1989).

The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d at 25.  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
.  Our inquiry here is whether, in reviewing the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent’s parental rights would be in the best interest of the child.  
Id
. at 28.

DISCUSSION

The evidence established that between 1999 and 2002 when the children were removed from Appellant’s home, Lowell frequently beat, bit, burned, choked, and tormented C.G.E. and L.C.S.  Appellant was aware of the abuse and knew that her children were terrified of Lowell.  Although Appellant was repeatedly warned by case workers to protect her children, she failed to do so.  In 2000, Appellant promised the trial court that she would sever all ties with Lowell, and she made the same promises to CPS case workers over the course of several years.  However, Appellant always allowed Lowell to move back into the house with her and her children, and Lowell would again begin to physically abuse the two older children.  Appellant continued to have contact with Lowell even after they divorced, at which time she referred to him as her husband, and she remained emotionally dependent upon him.

Three CPS case workers who worked extensively with Appellant and the children testified that in their expert opinions termination would be in the best interest of the children because Appellant has exhibited a complete inability to sever ties with Lowell and has failed to protect her children from him.  CPS believes that all three children can be placed with suitable adopting parents. The treating psychologist for the two older children testified that it would be extremely detrimental for the children to ever have any contact with Lowell.  The children’s guardian ad litem and their attorney ad litem both testified that in their opinions Appellant has not demonstrated that she has the ability to protect the children from Lowell.  They opined that Appellant 
remains dependent upon Lowell emotionally and physically and that this is a detriment to the children because Appellant will not be able to break her ties with Lowell if the children return home.

Having thoroughly reviewed all the evidence and applying the appropriate standard of review,
(footnote: 8) we conclude the evidence was such that the trial court, as finder of fact,
 could reasonably form a firm belief or conviction by clear and convincing evidence that termination of Appellant’s parental rights would be in 

the best interest of the children.  Accordingly, we overrule Appellant’s sole issue and
 affirm the judgment of the trial court.

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and WALKER, J.

DELIVERED:  April 7, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
To protect the privacy of the parties involved in this appeal, we identify the children by initials only and Appellant by her first name only, although we will refer to her as Appellant.  
See
 
Tex. Fam. Code Ann.
 § 109.002(d) (Vernon 2002).  When appropriate, we will refer to C.G.E., L.C.S., and M.W.S. collectively as “the children.” 

3:
The name of the agency has changed to the Texas Department of Family and Protective Services effective September 1, 2003.  
See
 Act of June 2, 2003, 78th
 Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 611, 641, 729.  However, because the pleadings and judgment in the trial court refer to the Texas Department of Protective and Regulatory Services, for the sake of consistency will do likewise in this opinion.

4:
Tex. Fam. Code Ann.
 §§ 161.001(1)(E), (O), 161.001(2) (Vernon 2002).

5:
Appellant’s issue is phrased as a challenge to the “sufficiency” of the evidence.  Inasmuch as Appellant requests the trial court’s termination judgment be reversed and the case remanded for a new trial, we construe her contention to be a challenge to the factual, not the legal, sufficiency of the evidence.

6:
On September 30, 2003, Lowell signed affidavits of relinquishment regarding his parental rights in L.C.S. and M.W.S. and that cause was severed from the cause TDPRS brought against Appellant and Daniel.  The judgment terminating the parental rights of Appellant also terminated the parental rights of Daniel in C.G.E. Daniel has not appealed this ruling.

7:
The record does not reflect why Appellant was incarcerated.

8:
See In re C.H.
, 89 S.W.3d at 25-28.