NO. 07-08-0258-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 12, 2008

_____


IN THE INTEREST OF A.T.C., A CHILD

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-791,368; HONORABLE BRAD UNDERWOOD, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION ON MOTION FOR REHEARING**

Remaining convinced that our original disposition was correct, we will, however, grant Appellant's Motion for Rehearing and Reconsideration, withdraw our opinion of November 14, 2008, and issue this opinion in lieu thereof. Appellant, M.C.,[1] challenges the trial court's order terminating his parental rights to his son, A.T.C. Presenting a sole issue, he maintains the evidence is insufficient to support termination. We affirm.

_____

[1]*See* Tex. Fam. Code Ann. § 109.002(d) (Vernon 2002); Tex. R. App. P. 9.8(b)(1).

## Background

A.T.C.'s mother, W.E.W., and his father, M.C., began dating when they were teenagers. On December 7, 1999, when W.E.W. was seventeen, she gave birth to A.T.C. She and M.C. never married nor lived together and she ended the relationship approximately six months after A.T.C. was born. M.C.'s parentage was adjudicated in 2000 and both he and W.E.W. were named joint managing conservators. Child support payments of $155 per month based on minimum wage were ordered to begin on August 1, 2000. Visitation by M.C. was left in W.E.W's discretion. According to W.E.W.'s testimony, M.C. has not had any contact with A.T.C. since he was one year old and has not provided financial or other support in years.

In 2004, W.E.W. married J.P.W. She is a pediatric nurse and her husband works in the construction business and is a full-time college student. They have a daughter who is younger than A.T.C. After his half-sister was born, A.T.C. expressed concerns to his stepfather that he was the only person in the family that had a different surname. W.E.W. decided to pursue termination of M.C.'s parental rights so that J.P.W. could adopt A.T.C. She wrote M.C., who was incarcerated at the time, to request that he relinquish his parental rights. According to W.E.W., M.C. refused to cooperate despite his lack of involvement in A.T.C.'s life.

W.E.W. and J.P.W. initiated termination proceedings. They alleged the following grounds:

2

(1) M.C. voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;

(2) M.C. failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;

(3) M.C. knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition; and

(4) termination is in the best interest of the child.

*See* Tex. Fam. Code Ann. § 161.001(1)(C), (F), and (Q), and (2) (Vernon Supp. 2008). The trial court granted the petition for termination based solely upon § 161.001(1)(C), impliedly finding that M.C. voluntarily left the child in the possession of another without providing adequate support of the child and remained away for a period of at least six months.

## Termination of Parental Rights

The natural right existing between parents and their children is of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings must be strictly scrutinized. *In Interest of G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. Thus, due process requires application of the clear and convincing standard of proof in cases involving

3

involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* § 101.007. *See also In Interest of G.M.*, 596 S.W.2d at 847; *In re Z.J.*, 153 S.W.3d 535, 539 (Tex.App.–Amarillo 2004, no pet.). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of the child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Section 161.001 of the Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of the statute and also proves that termination of the parent-child relationship is in the best interest of the child. *See* § 161.001(2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Though the same evidence may be probative of both issues, both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See id.*; *In re C.H.*, 89 S.W.3d at 28.

**Lack of Findings of Fact**

Notwithstanding M.C.'s request for findings of fact and conclusions of law, he did not make a further request as required by Rule 297 of the Texas Rules of Civil Procedure. Consequently, the trial court did not file findings nor conclusions. In such a case, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers*

4

*County*, 922 S.W.2d 945, 948 (Tex. 1996). When a reporter's record is filed, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence. *BMC Software Belg.*, *N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

## Standard of Review

M.C. maintains, by his sole issue, that the evidence is insufficient to support the trial court's termination order. In reviewing the legal sufficiency of the evidence to support an order terminating parental rights, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.*

5

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . allegations. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (citing *In re C.H.*, 89 S.W.3d at 27). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re H.R.M.*, 209 S.W.3d at 108 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Only one statutory ground is required to terminate parental rights under § 161.001. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.). Therefore, we will affirm the termination order if the evidence is sufficient on any statutory ground relied on by the trial court in terminating the parent-child relationship when there is also a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d at 362.

## Discussion[2]

### I. § 161.001(1)(C) - Grounds for Involuntary Termination

The court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has left the child alone or in the possession of another

---

[2]It is noteworthy that the record establishes that M.C. chose not to be present at the termination hearing other than through counsel's representation.

without providing adequate support of the child and remained away for a period of at least six months. *See* § 161.001(1)(C). This ground is commonly characterized as the abandonment of a child by a parent. *See In re T.B.D.*, 223 S.W.3d 515, 518 (Tex.App.–Amarillo 2006, no pet.). The six-month period is a period of at least six consecutive months. *See id.*

As previously mentioned, M.C. was named joint managing conservator of A.T.C. in 2000 when his parentage was established. According to W.E.W.'s undisputed testimony, M.C. was not interested in having a relationship with A.T.C. if he could not have one with her also. At the time of the hearing, A.T.C. was eight years old. M.C. had not seen A.T.C. since he was one year old and before that, he only saw him a "handful" of times. W.E.W. recalled M.C. calling about three times since A.T.C. was one. When A.T.C. was four years old, W.E.W. saw M.C. at a funeral where he inquired about A.T.C., but did not ask to see him. When A.T.C. was six years old, M.C. called W.E.W., but only to talk about his father's poor health; he did not ask about A.T.C. W.E.W. and M.C. had a chance encounter at an airport when A.T.C. was very young. When M.C. asked about him, W.E.W. pointed in A.T.C.'s direction "a ways off" but M.C. did not exit his car to see A.T.C.

Basically, W.E.W.'s testimony established that M.C. had no contact with A.T.C. after he was one year old. After W.E.W. initiated termination proceedings, M.C. did attempt to correspond from prison, but she refused the correspondence to avoid confusing A.T.C. In her words, "[A.T.C.] doesn't know who [M.C.] is."

W.E.W. testified that neither M.C. nor his family have provided any financial or other support for A.T.C. over the years. She recalled that diapers were provided a few times. According to Attorney General reports, no child support has been paid by M.C. since August 18, 2003. The evidence is clear and convincing that M.C. voluntarily left A.T.C. in W.E.W.'s possession without providing adequate support and that M.C. remained away for a period of six consecutive months. Thus, the evidence is legally and factually sufficient to support termination under §161.001(1)(C).

## II.    §161.001(2) – Best Interest

Notwithstanding the sufficiency of the evidence to support termination under § 161.001(1)(C), we must also find clear and convincing evidence that termination of the parent-child relationship was in A.T.C.'s best interest. *See* § 161.001(2). In deciding the best interest of a child, we consider several factors including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. These factors are not exhaustive; some listed factors may be inapplicable to some cases, while other factors not on the list may also be considered

8

when appropriate. *In re C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id*. On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id*. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See id*. at 28. In any case, there must be evidence from which a factfinder could reasonably have formed a firm conviction or belief that the child's best interest warranted termination. *In re D.S.A.*, 113 S.W.3d 567, 574 (Tex.App.--Amarillo 2003, no pet.).

W.E.W. is a pediatric nurse and J.P.W. has held the same job for twelve years, and according to W.E.W., they have a good marriage. In addition to A.T.C.'s younger half-sister, J.P.W. also has an older daughter. The extended family is very involved in youth activities, family functions, and family birthdays. J.P.W. coaches A.T.C.'s soccer team. W.E.W. testified that A.T.C. expressed an interest in being raised by his stepfather.

Neither M.C. nor his family have a relationship with A.T.C. W.E.W. testified that when A.T.C. was three weeks old, they visited M.C.'s parents during Christmas and they did not express a desire to have a relationship with their grandson. According to W.E.W., the paternal grandparents fought and she believed they were alcoholics. There is no evidence that they ever provided any support for A.T.C. In light of the entire record, we

find clear and convincing evidence that termination of M.C.'s parental rights to A.T.C. was in the child's best interest. Consequently, we overrule M.C.'s sole issue.

Accordingly, the trial court's termination order is affirmed.

Patrick A. Pirtle
Justice