COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-170-CV

 

 

IN THE INTEREST OF M.C.T., A CHILD                                                    

 

                                                    

                                                                                                        

 

                                              ------------

 

             FROM
THE 158TH DISTRICT COURT OF DENTON
COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

Appellant Tina A. appeals the
termination of her parental rights to her son, M.C.T.  In three points, Appellant argues that the
evidence is legally and factually insufficient to support the termination
order, that she was denied effective assistance of counsel, and that family
code section 263.405(i) violates her right to due process.  We will affirm.

 








II.  Factual and Procedural Background

M.C.T., Appellant=s biological son, is an emotionally disturbed and educationally and
developmentally delayed twelve-year-old boy. 
Appellant has two other sons, J.T., who is sixteen, and N.T., who is
older than M.C.T. but younger than J.T. 
Johnnie T. is the alleged biological father of M.C.T., J.T., and N.T.[1]

On or about January 25, 2006,
police discovered M.C.T., who was ten years old, wandering the streets after
11:00 p.m.  Appellant was in Florida and
initially contended that she had left M.C.T. in the care of a person named ARick,@ but later
claimed to have left M.C.T. in his father=s care.  Appellant=s mother and sister refused to pick up M.C.T., and Appellant did not
return from Florida for a few days. 
Texas Department of Family and Protective Services (ATDFPS@) removed
M.C.T. from Appellant=s home and
placed him with a foster family.  TDFPS
returned M.C.T. to Appellant=s care in August 2006 but re-removed him on November 9, 2006, and
placed him with a second foster family. 
Between November 2006 and late April 2007, the time of trial, M.C.T. was
admitted twice to the inpatient psychiatry unit at Cook Children=s Hospital.  M.C.T. was in
Houston at a residential treatment center during trial.








Rebecca Ash, a
psychotherapist, testified that she began individual counseling with Appellant
at the end of March 2006 and counseled Appellant=s family from August 2006 until TDFPS re-removed M.C.T. in November
2006. Ash reasoned that J.T., N.T., and M.C.T. are Avery@ difficult
to handle and described Appellant=s family as Aextremely
dysfunctional@ with a lot
of chaos and physical and verbal aggression among the family members.  M.C.T. reported to Ash that J.T. and N.T.
regularly Aphysically
abuse[d]@ him and that Appellant never spent any time with him.  Ash opined that M.C.T. did not feel safe at
home because of daily roughhousing between the boys and physical and verbal
aggression directed at M.C.T. by J.T. and N.T. 
Nothing that Ash observed in the counseling sessions indicated that
Appellant exercised control over the children, and Appellant denied there being
a problem in protecting her children from the abuse and minimized the problems
faced by her children.  Ash concluded
that Appellant=s home was
not a safe environment for M.C.T., stating that she supported the termination
of Appellant=s parental
rights to M.C.T., which she believes would be in M.C.T.=s best interest.








Marvin Jones, a family
therapist at Cook Children=s Hospital, testified that M.C.T. had been admitted to the hospital
because he was a danger to himself and to others; M.C.T. pushed a foster
sibling into a railing, ran away from his foster home, and made statements that
he wanted to harm himself.  Jones
testified that M.C.T. did not know his date or place of birth and that he
experienced difficulty with Asequence,@ which was
not normal for a child of his age.  He recounted
that M.C.T. told him that Appellant abandoned him, that Appellant went to
Mexico relatively recently without him, that Ahe was pretty much on his own@ at home, that he did not feel safe at home with Appellant and his
brothers, and that M.C.T. and his brothers Awere pretty well left to do what they wanted to do.@  Jones concluded that M.C.T.
does, however, do well in a structured and stable environment and that he needs
Afairly intensive@
supervision, therapy, and educational development.  He agreed that Ait would be a detriment to him if he did not get those things.@  Jones opined that it is not in
M.C.T.=s best interest to return to an environment like he was in while
living with Appellant.

Angela Batson, a licensed
professional counselor, counseled M.C.T. after TDFPS removed M.C.T. from
Appellant=s home the
second time.  Batson agreed that M.C.T.
is Aaggressive@ and Adestructive,@ that his
relationships Afor the most
part are combative,@ and that he
requires Aintense
supervision.@  M.C.T. told Batson that there were no rules
at home and that he could do whatever he wanted to do.  Batson opined that it would be detrimental to
M.C.T.=s well-being and not in his best interest to live in a home with no
supervision.








M.C.T.=s second foster mom testified that she had the impression there was no
structure at Appellant=s home and
that M.C.T did whatever he wanted to do. 
She agreed that M.C.T. has some Avery serious@ behavioral
problemsChe lied, had Aawful@ language, destroyed and tore up things, and was Aout of control@ at
school.  M.C.T. told her that Appellant
could neither take care of nor handle him and his brothers and that Appellant Awould go off and leave him, or he and his brothers would just
sometimes be there by@
themselves.  M.C.T.=s foster mom agreed that he needs intense supervision and opined that
it would be Adetrimental@ (both developmentally and physically) to him if he was not supervised
at home.








Connie McAnnally, the CASA
worker who investigated M.C.T.=s case, testified that M.C.T. improved at his first foster home, but
that when he returned to Appellant=s care in August 2006, he Aspiraled down quickly in a variety of ways, in school and in the
sessions with the therapist and in [her] observations of him when [she] went to
visit with him when he was living with his mom.@  M.C.T.=s Aacting out,
aggression, and violence@ primarily
began when he was returned to Appellant=s care in August 2006. 
McAnnally observed M.C.T. with his older brothers.  They were Avery hard to control@ and kind of Abouncing off
the walls.@  McAnnally explained that Appellant left
M.C.T. home frequently, that there were few rules or boundaries at home, that
M.C.T. Apretty much did his own thing,@ and that Appellant has no family or outside support to help her with
the children.  She recounted that M.C.T.
is on Apsychotropic@ medication,
that he needs to have his medications checked periodically, and that Appellant
had missed a few of his medical appointments over the course of the
investigation.  McAnnally obtained police
reports from the Garland Police Department showing that police were called to
Appellant=s residence
thirteen times between March 2006 and November 2006.  She testified that M.C.T. had attended eleven
different elementary schools, nine prior to TDFPS=s intervention, and that he is in the sixth grade but reads at a
first-grade level and does mathematics at a second-grade level.  McAnnally ultimately opined that it was in
M.C.T.=s best interest that Appellant=s parental rights be terminated.








Miranda Moughon served as a
caseworker on M.C.T.=s case.  She testified that Appellant did not
implement the counselors=
recommendations and that Appellant cannot keep M.C.T. safe or provide for his
needs.  Moughon was aware that M.C.T.=s siblings were Aassaulting@ him.  She testified that a Family
Based Safety Services worker observed Appellant and her children in her home
and that Ahe observed
the chaos in their home stating that he was at a loss.@ Moughon visited Appellant=s home a few times.  On one
occasion, Moughon noted that a window had been broken by N.T. and that there
was broken glass and Aextremely
sharp@ pieces of glass in the window pane. 
Moughon testified that it was TDFPS=s opinion that Appellant=s parental rights should be terminated and that termination was in
M.C.T.=s best interest.

Steve A., Appellant=s husband since May 2006, testified that Appellant=s children respond well to their mother=s discipline and that he has never seen J.T., N.T., or both put M.C.T.
in a dangerous situation.  Appellant
testified that she can provide a safe environment for M.C.T.  She did not recall that there had been
fourteen referrals to CPS involving her and her children; that J.T., who has
been to a psychiatric hospital and sees a psychiatrist, allegedly stabbed a
teacher in 2004; or that M.C.T. made a sexual abuse outcry in 2003 after M.C.T.
and J.T. had been sharing a bed.

The trial court signed an
order terminating Appellant=s parental rights to M.C.T., finding by clear and convincing evidence
that termination was appropriate under subsections (D), (E), and (O) of family
code section 161.001(1) and that termination was in M.C.T.=s best interest.  See Tex. Fam. Code Ann. ' 161.001 (Vernon Supp. 2007). 
This appeal followed.

III.  Sufficiency Arguments








In her first point, Appellant
argues that the evidence is legally and factually insufficient to support the
termination of her parental rights to M.C.T. under family code sections
161.001(1)(D), (E), and (O).  She also challenges
the sufficiency of the evidence underlying the trial court=s best interest finding. The State argues that Appellant failed to
preserve her sufficiency complaints for review because she did not assert them
in a timely filed statement of points or in a statement combined with a motion
for new trial.[2]  Alternatively, the State argues that the
evidence is legally and factually sufficient to support the trial court=s findings.

In a recent en banc decision,
this court held that family code section 263.405(i) is void as a violation of
the separation of powers provision of the Texas constitution.  See In re D.W., No. 2-06-00191-CV,
2008 WL 467328, at *1 (Tex. App.CFort Worth Feb. 19, 2008, no pet. h.). 
We are bound to follow our own precedent, so we will consider the merits
of M.C.T.=s
sufficiency arguments.[3]

A.     Standards of Review








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758B59, 102 S.
Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  TEX. FAM. CODE ANN. ' 161.206(b) (Vernon Supp. 2007); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  We strictly
scrutinize termination proceedings and strictly construe involuntary
termination statutes in favor of the parent. 
Holick, 685 S.W.2d at 20B21; In re E.M.N., 221 S.W.3d 815, 820 (Tex. App.CFort Worth 2007, no pet.).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one ground listed under subdivision (1) of
the statute and must also prove that termination is in the best interest of the
child.  TEX. FAM. CODE ANN. ' 161.001;
In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  TEX. FAM. CODE ANN. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263
(Tex. 2002).  This intermediate standard
falls between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort Worth 2006, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).








In reviewing the evidence for
legal sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573 (Tex.
2005).  We must review all the evidence
in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the fact-finder resolved any
disputed facts in favor of its finding if a reasonable fact-finder could have
done so.  Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could and disregard contrary evidence unless a
reasonable fact-finder could not.  Id.

We must therefore consider
all of the evidence, not just that which favors the verdict.  Id.  But we cannot weigh witness credibility issues
that depend on the appearance and demeanor of the witnesses, for that is the
fact-finder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the fact-finder=s determinations as long as they are not unreasonable.  Id. at 573.








In reviewing the evidence for factual sufficiency, we must give due
deference to the fact-finder=s findings and not
supplant the judgment with our own. 
In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the entire
record, a fact-finder could reasonably form a firm conviction or belief that
the parent violated a provision of section 161.001(1) and that the termination
of the parent=s
parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28.  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

 

B.      Sufficient
Evidence Supports Termination Under Sections 161.001(1)(D) and (E)

 

The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
child.  Tex.
Fam. Code Ann. ' 161.001(1)(D).  Endangerment is defined as exposing to loss
or injury, to jeopardize.  In re
J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort Worth 2003,
no pet.).  Under subsection (D), it is
necessary to examine evidence related to the environment of the child to
determine if the environment was the source of endangerment to the child=s physical or
emotional well-being.  In re D.T.,
34 S.W.3d 625, 632 (Tex. App.CFort Worth 2000,
pet. denied).  To support a finding of
endangerment, the parent=s conduct does not necessarily have to be
directed at the child nor is the child required to suffer injury.  Boyd, 727 S.W.2d at 533.








The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
engaged in conduct or knowingly placed the child with persons who engaged in
conduct which endangers the physical or emotional well-being of the child.  Tex.
Fam. Code Ann. ' 161.001(1)(E).  Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s physical or
emotional well-being was the direct result of the parent=s conduct,
including acts, omissions, and failures to act. 
J.T.G., 121 S.W.3d at 125. 
Termination under subsection (E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  Id.; D.T.,
34 S.W.3d at 634.








Because the evidence
pertaining to subsections 161.001(1)(D) and (E) are interrelated, we conduct a
consolidated review.  In re T.N.S., 230 S.W.3d 434,
439 (Tex. App.CSan Antonio 2007, no pet.); J.T.G., 121 S.W.3d at 126. 
The evidence demonstrates that Appellant often left M.C.T. at home
alone.  Police found M.C.T. wandering the
streets after 11:00 p.m. in late January 2006. 
Appellant was in Florida, and no one claimed to have been responsible
for watching over M.C.T. despite Appellant=s insistence that it was Johnnie T.=s responsibility.  M.C.T. told a
counselor that Appellant once went to Mexico without him.  M.C.T. also reported to multiple counselors
and therapists that there are no rules at home, that Appellant regularly left
him home alone, that he is Apretty much on his own@ at home, and that he and his brothers were essentially Aleft to do what they wanted to do.@

The evidence shows that
M.C.T. consistently experienced physical and verbal abuse and aggression from
J.T. and N.T.  M.C.T. reported that he
does not feel safe at home in part because of regular physical abuse and
assaults directed at him by his siblings. 
Multiple individuals described M.C.T.=s brothers as very difficult to handle or control, and one person,
after having observed them, described them as Abouncing off the walls.@  On one occasion, N.T.
shattered a window at Appellant=s home, and J.T. assaulted Appellant by hitting her in the back on at
least one occasion. Garland police responded to disturbances at Appellant=s residence thirteen times between March 2006 and November 2006.  Numerous witnesses reasoned that Appellant=s home was not a safe environment for M.C.T.








Even though M.C.T. requires
intense supervision, the evidence demonstrates that Appellant either
experienced difficulty controlling M.C.T. and his siblings or did not exercise
any control over them at all.  Ash
testified that nothing she observed in counseling sessions indicated that
Appellant exercised control over the children, and M.C.T. told his foster mom
that Appellant could neither take care of nor handle he and his brothers.  M.C.T. takes medication, and Appellant missed
a number of appointments to have his medication checked and possibly changed.








We have thoroughly reviewed
the evidence in this case.  Viewing all
the evidence in the light most favorable to the judgment, a fact-finder could
reasonably have formed a firm belief or conviction that Appellant knowingly placed
or knowingly allowed M.C.T. to remain in conditions or surroundings that
endangered his physical or emotional well-being and that Appellant engaged in
conduct or knowingly placed M.C.T. with persons who engaged in conduct that
endangered M.C.T.=s physical or emotional well-being.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E); J.P.B., 180 S.W.3d at 573.  The evidence is thus legally sufficient to
support the trial court=s
termination findings under subsections 161.001(1)(D) and (E) of the family
code.  Moreover, considering the entire
record, a fact-finder could reasonably form a firm conviction or belief that
Appellant violated subsections 161.001(1)(D) and (E).  See C.H., 89 S.W.3d at 28.  The disputed evidence that a reasonable
fact-finder could not have credited in favor of the trial court=s subsections 161.001(1)(D) and (E) termination findings is not so
significant that a fact-finder could not reasonably have formed a firm belief
or conviction in the truth of the challenged findings.  See H.R.M., 209 S.W.3d at 108.  Consequently, the evidence is also factually
sufficient to support the trial court=s termination findings under subsections 161.001(1)(D) and (E).  Because we have held that the evidence is
legally and factually sufficient to support the trial court=s subsection 161.001(1)(D) and (E) findings, we need not determine
whether the evidence is sufficient to support the trial court=s section 161.001(1)(O) finding. 
See J.L., 163 S.W.3d at 84 (stating that Petitioner must
establish only one ground listed under subsection 161.001(1)).

C.     Best Interest Finding

Prompt and permanent
placement of the child in a safe environment is presumed to be in the child=s best interest.  Tex. Fam. Code Ann. ' 263.307(a) (Vernon 2002). 
There is also a strong presumption that keeping a child with a parent is
in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include the following:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future;

 

(3)    the emotional and physical danger to the child now and in the
future;

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 








(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or
omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).  These factors
are not exhaustive; some listed factors may be inapplicable to some cases;
other factors not on the list may also be considered when appropriate.  C.H., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.













Here, Appellant testified
that she performed much, if not all of the service plan assigned to her; that
she felt like she was doing everything possible to regain custody of M.C.T.
when she learned that TDFPS was going to attempt to terminate her parental
rights; that she has learned new techniques for disciplining her children; that
she has hired a family counselor; and that she can provide a safe environment
for M.C.T.[4]  The evidence, however, shows that M.C.T. is
emotionally disturbed, is educationally undeveloped, and requires intense
supervision.  Appellant often leaves
M.C.T. alone and unsupervised or alone with J.T. and N.T., siblings who
regularly Aphysically
abuse@ him.  Appellant experiences
serious problems controlling M.C.T. and his brothers.  Although M.C.T. opined that he would like to
return to Appellant=s home or be
with his brothers, numerous witnesses testified that it would be detrimental to
M.C.T.=s physical and emotional well-being to remain in an environment like
the one at Appellant=s home and
that it would be in his best interest for Appellant=s parental rights to be terminated. 
Factors including the emotional and physical needs of M.C.T. now and in
the future, the emotional and physical danger to M.C.T. now and in the future,
the parental abilities of Appellant, the stability of Appellant=s home, and the acts or omissions of Appellant all heavily weigh in
favor of the finding that termination of Appellant=s parental rights to M.C.T. is in M.C.T.=s best interest.  See Holley,
544 S.W.2d at 371B72.  Consequently, we hold that the evidence is
legally and factually sufficient to support the trial court=s finding that termination of Appellant=s parental rights to M.C.T. is in M.C.T=s best interest.  See Tex. Fam. Code Ann. ' 161.001(2); H.R.M., 209 S.W.3d at 108; J.P.B., 180
S.W.3d at 573.  Accordingly, we overrule
Appellant=s first
point.

IV.  Ineffective Assistance of Counsel

In her second point,
Appellant argues that her trial attorney was ineffective because her counsel
did not seek a ruling challenging the sufficiency of the evidence, request a
record or a hearing on her motion for a jury trial, request findings of fact or
conclusions of law, file a family code section 263.405(i) statement of points,
and object to objectionable questions posed by TDFPS.








There is a right to effective
assistance of counsel in termination cases.  In re M.S., 115 S.W.3d 534, 544 (Tex.
2003).  We review ineffective assistance
claims under the Strickland standard. 
Id. at 549.  To establish
ineffective assistance of counsel, appellant must show by a preponderance of
the evidence that her counsel=s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).

In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.  Thompson,
9 S.W.3d at 813-14.  AIn the majority of cases, the record on direct appeal is undeveloped
and cannot adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).








The second prong of Strickland
requires a showing that counsel=s errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is reliable. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is
a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.

Here, trial was to the bench,
so Appellant did not have to file a motion to preserve her sufficiency
arguments.  See Tex. R. App. P. 33.1(d) (AIn a nonjury case, a complaint regarding the legal or factual
insufficiency of the evidence 
. . . may be made for the first time on appeal in the
complaining party=s brief.@).  Appellant does not explainCand it is not apparentChow trial counsel=s failure to request a hearing and make a record on her request for a
jury trial was error or had any effect on her trial; thus, she fails to show
that there was a reasonable probability that but for trial counsel=s decision not to set a hearing on the motion, the result of the
proceeding would have been different.  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.








In a trial to the court where no findings of fact or
conclusions of law are filed, the trial court=s judgment implies
all findings of fact necessary to support it. 
Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).  However, where a reporter=s record is filed,
as in this case, these implied findings are not conclusive, and an appellant
may challenge them by raising both legal and factual sufficiency of the
evidence issues, which Appellant has done in this case.  Consequently, Appellant has not shown that her counsel=s
representation fell below the standard of prevailing professional norms by not
requesting the trial court to enter findings of fact and conclusions of
law.  See Strickland, 466 U.S. at
687B88, 104 S. Ct. at 2064B65.

Trial counsel=s failure to file a statement of points is moot in light of D.W.  See D.W., 2008 WL 467328, at *1.  And the record is silent as to
trial counsel=s reason for
not objecting to the multitude of questions cited in Appellant=s brief and posed by opposing counsel. 
These alleged errors in trial counsel=s performance are acts of omission, which are particularly ill-suited
to review on direct appeal because the reason for counsel=s omission is not reflected in the record.  See Thompson, 9 S.W.3d at 814.  Appellant has thus failed to rebut the strong
presumption that her trial counsel=s decision not to object to the complained-of portions of the
testimony fell within the wide range of reasonable professional
assistance.  See Strickland, 466
U.S. at 687B88, 104 S.
Ct. at 2064B65; Thompson,
9 S.W.3d at 814.  We overrule Appellant=s second point.

V.  Due Process








In her third point, Appellant
argues that family code section 263.405(i)=s requirement that she file a specific statement of points within
fifteen days after a final order is signed denies her due process.  However, as TDFPS point out, if we determined
that section 263.405(i) denied Appellant due process, her remedy would be to
have her sufficiency and ineffective assistance of counsel arguments addressed,
which, having determined in D.W. that section 263.405(i) is void as a
violation of the separation of powers provision of the Texas constitution, we
have already done above.  Thus, Appellant
was not denied due process because we have addressed her arguments.  We therefore overrule Appellant=s third point.

VI.  Conclusion

Having overruled each of
Appellant=s points, we
affirm the trial court=s judgment
terminating Appellant=s parental
rights to M.C.T.

 

 

DIXON W. HOLMAN

JUSTICE

PANEL F: 
HOLMAN, WALKER, and MCCOY, JJ.

DELIVERED: 
March 6, 2008











[1]Johnnie
T. voluntarily relinquished his parental rights to M.C.T.





[2]See Tex. Fam. Code Ann. ' 263.405(i)
(stating that an appellate court may not consider any issue that was not
specifically presented to the trial court in a timely filed statement of the
points on which the party intends to appeal or in a statement combined with a
motion for new trial).





[3]TDFPS also argues that Appellant
failed to preserve her second and third points for appellate review because she
did not comply with section 263.405(i). 
For the same reason that we address M.C.T.=s first point, we will address her
second and third points.  See D.W.,
2008 WL 467328, at *1.





[4]Appellant argues that no service
plan ever existed because it was not admitted into evidence.  We note, however, that Appellant failed to
assert this objection at trial and that the judge took judicial notice of the
case file, which included the service plan.